Filed: February 16, 2012

# IN THE SUPREME COURT OF THE STATE OF OREGON

In the Matter of
D. S., a Child.

DEPARTMENT OF HUMAN SERVICES,

Respondent on Review,

v.

J. R. F.,

Petitioner on Review.

(CC 100350J; CA A147396; SC S059732)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 5, 2012.

Mary Shannon Storey, Senior Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

LANDAU, J.

The decision of the Court of Appeals is reversed. The order of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.

_____

*Appeal from Clackamas County Circuit Court, Douglas V. Van Dyk, Judge. 244 Or App 363, 261 P3d 42 (2011).

LANDAU, J.

At issue in this dependency case is the lawfulness of an order of the juvenile court that requires a father not to interfere with the ability of a child who is a ward of the court to visit other children who live with father but are not wards of the court. The Court of Appeals concluded that the juvenile court possesses authority to enter the order under ORS 419B.337(3), which authorizes the court to "make an order regarding visitation by the ward's parents or siblings." Father in this case contends that the Court of Appeals erred in so concluding, because the order at issue does not involve visitation "by the parents or the siblings." The Department of Human Services (DHS) contends that the Court of Appeals was correct, because, although ORS 419B.337(3) does not explicitly authorize the order at issue, the dependency statutes, taken as a whole, authorize the court to "make any order designed to further the best interest of a ward and advance the reunification of the family."

We conclude that, even if the state is correct about the scope of the authority that the statutes confer on the juvenile court, the record in this case is inadequate to support the order at issue. We therefore reverse the opinion of the Court of Appeals and vacate the order of the juvenile court.

The record discloses the following facts. D is 14 years old and lived with her father before DHS intervened. D's mother is currently incarcerated. Father lives with his girlfriend, Ms. Samuel. There are at least three children living with father and Samuel: R, G, and S. R is the biological brother of D and is approximately 12 years old. G is Samuel's son and apparently is not biologically related to D at all. He is either five

2

or six years old; the record is unclear about his age. Last, S is the child of father and Samuel and, therefore, D's half-sister. S is less than two years old.

D called a DHS hotline and reported that father had physically abused her. DHS responded by removing D from her father's home. DHS could not locate a relative willing to be a placement resource. Consequently, DHS placed D in foster care. Shortly thereafter, the juvenile court established jurisdiction over D and her parents.

Eight months later, the juvenile court held a review hearing pursuant to ORS 419B.449, to determine whether it should continue its jurisdiction or order modifications to the care, placement, or supervision of D. Father and D were not present at the hearing, but both were represented by separate counsel. A DHS caseworker and a Court Appointed Special Advocate (CASA) also attended.

For purposes of the review hearing, the trial court reviewed three reports: a DHS report, a CASA report, and a Child Welfare Case Plan. The contents of the three reports can be summarized as follows. During the eight months prior to the review hearing, D's interaction with father was limited. The CASA report notes that the state brought criminal charges against father regarding the alleged physical abuse of D. It also reports that "[n]either [D] nor [father] wish to have contact with each other at this time," and that father said that "he wanted [D] to remain in foster care and he did not wish to participate in the court process." The Child Welfare Case Plan also indicates that father told a DHS representative that D was lying about the physical abuse and was an "out of control" teenager.

All three reports state that D wanted to visit R, G, and S. The CASA report

notes that D mentioned that her family connections, with the exception of father, are "extremely important to her" and that she would "love to be able to see her younger siblings." The Child Welfare Case Plan details that D "has a strong attachment to her younger ½ sister, [S]," but that she "is not as close" to R. The DHS report states that, although father and Samuel facilitated one supervised visit between D, R, G, and S, they declined to allow further visitation, stating that, "if [D] isn't willing to see her father, then they are not willing to bring her siblings in for a visit." At the same time, in none of the three reports does CASA or DHS recommend or request that the juvenile court order father to facilitate visitation between D and the other children.

At the review hearing, the juvenile court and the DHS caseworker discussed how D was faring in foster care. The court then turned to the "very concerning circumstance" raised in all three reports -- that is, the fact that D was not having regular contact with R, G, and S. The court commented:

"It is unfortunate enough that [D] has been out of home placement, but to deprive her of the opportunity to have sibling visits strikes me as cruel. If the father doesn't want to participate, so be it. It seems to me that the father is before the Court, so I suppose the Court could make an order around that."

The caseworker responded that DHS had not requested such an order because prior judges had told her that the court did not have authority to order those visits. D's counsel agreed, stating that, because "those other children are not subject to jurisdiction of the Court, the Court has in the past been unwilling to make the other kids have visits with their sister if the custodial parent is disagreeing or saying they don't want to."

4

Father's attorney concurred, stating, "I don't believe there is any authority to make those orders without the children -- without those children being before this Court and would encourage the Court not to do so." He also asserted that the reports by DHS were "not really accurate" in describing father's position. His attorney stated that father was not happy with not having a relationship with D and was not trying to "ostracize" her.

Father's attorney asserted that there were two issues causing father difficulty in participating in DHS services and facilitating visitation with D. First, the criminal charges pending against father, he argued, were a serious barrier to contact, because, either on recommendation of criminal defense counsel or by criminal trial court order, father was prohibited from contacting D during the pendency of those charges. Second, father was struggling financially and was the only person available to provide childcare for R, G, and S. Those two factors, he concluded, made it difficult for father either to participate in DHS services or to facilitate visitation between D and the young children. Father's attorney indicated that father was "willing to do family therapy" but was unsure "specifically what [father's] response would be in regards to visits between the other siblings and [D] or what structure he might or might not approve of."

The juvenile court expressed sympathy for father's situation, but stated that interaction with her siblings was "necessary for [D's] well being." Still, the court explained that, based on the pending criminal charges, it was not "making a finding without [father] even being present that he ha[d] obstructed [visitation] in the past."

The court then discussed with the DHS caseworker the proper scope of the

proposed visitation order. She mentioned a holiday party hosted by DHS that she hoped D and her siblings could all attend. She also explained that there was some complexity in ordering visitation:

> "The complexity to [visitation without father being present] is that I believe the sibling who D most wants to see and who would be most inclined to see [D] is less than two years old. I don't believe that Ms. Samuel -- it is Ms. Samuel's daughter with [father] -- I don't believe she is comfortable with giving her child over to me to facilitate a visit."

The court responded, "Then we won't. That's a little too young," and then inquired about the other siblings. The caseworker explained that R was a biological sibling, who she "believe[d]" was 12 years old. She also explained that G "is also in the home. He is not a biological sibling, but he is five or six." The court then concluded that it did not "have any authority with regard to [G's] circumstance, except it is still available to me to say that father will not interfere."

Father's attorney again objected, arguing that "this Court does have authority with regard to father's participation with regard to [D], but the other children and other aspects of his life are not within the Court's jurisdiction[.]" The court reiterated that "[t]he expectation is he will make the child sibling available for contact; make the child sibling available for this holiday party." The DHS caseworker requested the court to clarify its holding to address to which children the court was directing its order. After reviewing the facts that G is not biologically related to D and that S was, at the time of the hearing, under the age of two, the juvenile court held that "my order is going to extend to [R]. You can explain that I turned the State down around [S] and the non-sibling[, G]." Four days later, the court entered the order at issue, which provides:

6

"Father will not interfere or obstruct contact between [D] and siblings. Father shall make sibling ([R]) available for holiday party. DHS will make gas card available."

Father appealed, arguing that the juvenile court lacked authority to force him to make his other three children available for visitation with D and that doing so violated his due process right to direct the upbringing of his children under *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000). DHS responded that the juvenile court had authority to order father to allow D to visit his other three children because ORS 419B.387 requires a parent under the jurisdiction of the juvenile court to participate in "treatment or training." As to father's due process right, DHS acknowledged that, under *Troxel*, there is a presumption in favor of a parent's exercise of parental authority, but the presumption may be rebutted if the juvenile court finds sufficient evidence that the parent is not acting in the best interests of the children. In this case, DHS asserted, the juvenile court did find such evidence based on the fact that father did not allow his three children to have contact with D.

In a written opinion, the Court of Appeals affirmed. *Dept. of Human Services v. J. R. F.*, 244 Or App 363, 261 P3d 42 (2011). The court noted that ORS 419B.385 grants the juvenile court authority to order a parent "to assist the court in any reasonable manner in providing appropriate education or counseling for the ward." Additionally, ORS 419B.387 provides that the juvenile court may order a parent to participate in "treatment or training." The court held that, although neither of those provisions addressed the juvenile court's authority to direct a parent's conduct with respect to children who are not within the juvenile court's jurisdiction, ORS 419B.337(3)

7

does authorize the court to make an order "regarding visitation by the ward's parents or siblings." The court held that the latter statute confers sufficient authority to support the juvenile court's order. As for father's contention that interpreting the order to confer such authority would violate his due process rights, the court concluded, *sua sponte*, that father had failed to preserve the contention and declined to address the matter. *J. R. F.*, 244 Or App at 367.

On review, father contends that the Court of Appeals erred in concluding that any of the statutes that it mentioned provide authority for the juvenile court's order in this case. In particular, father argues that the court's reliance on ORS 419B.337(3) was misplaced because that statute, by its terms, pertains solely to juvenile court orders that DHS allow visitation of the ward "by the ward's parents or siblings." Nothing in the record of this case, he argues, suggests that DHS is not permitting either the parents or the siblings to visit D. The state takes the position that, although no single statute expressly authorizes the juvenile court's order in this case, the juvenile code, taken as a whole, suggests that the court possesses authority to enter any order that it deems necessary to the welfare of the child in its jurisdiction.

At oral argument, the court questioned whether the record was adequate for review of the questions presented. Counsel for DHS candidly expressed frustration with the state of the record, because evidence about whether father in fact intended to deny visitation and, if he had, the reasons for that intention could make a difference. Without such evidence, counsel stated, "it makes it difficult to sort of figure out what the court's order is really doing." At one point, counsel was asked what would be wrong with

8

vacating the order and remanding for proper development of a record, and counsel replied, "I don't think there's anything wrong with that." Counsel insisted that the narrow issue that the Court of Appeals addressed -- whether purely statutory authority supports the juvenile court's order -- could be resolved without reference to any problems with the evidentiary record. But, if this court considers the possible due process implications of the order, counsel for DHS stated, the record is inadequate for review.

With the foregoing in mind, we turn to the order in dispute in this case. At the outset, we note that the record in this case is troubling in several respects. First, at the conclusion of the hearing, the trial court did not make any findings of fact, as required by ORS 419B.449(2) ("At the conclusion of the hearing, the court shall enter findings of fact."). In fact, the court expressly declined to make a finding that father had interfered with visitation. Second, in a related vein, there appear to be some inconsistencies between what the trial court said at the hearing and what it ordered. For example, at one point, the trial court stated that it did not intend to order father to take any action with respect to S, the youngest sibling, yet the order itself requires father not to interfere with D's visitation with *any* of her siblings. Relatedly, the court asserted that it possessed authority "to say that father will not interfere" with visitation with G and, apparently, intended that its order extend to visitation with that child. Yet the court acknowledged that it lacked authority with respect to G, who is not even father's child and not D's biological sibling. *See* ORS 419A.040(27) (defining "sibling" for purposes of the juvenile code).

We need not address any of those issues, however, because the record is

9

also inadequate to establish that the order is consistent with the rights of parents to make decisions concerning the care, custody, and control of their children -- rights that the legislature explicitly recognized in setting out the authority of the juvenile court. ORS 419B.090(4) provides:

> "It is the policy of the State of Oregon to guard the liberty interest of parents protected by the Fourteenth Amendment to the United States Constitution and to protect the rights and interests of children * * *. The provisions of this chapter shall be construed and applied in compliance with federal constitutional limitations on state action established by the United States Supreme Court with respect to interference with the rights of parents to direct the upbringing of their children, including, but not limited to, the right to:
>
> "(a) Guide the secular and religious education of their children;
>
> "(b) Make health care decisions for their children; and
>
> "(c) Discipline their children."

Thus, whatever authority may be said to have been conferred by the statutes that the parties dispute in this case -- an issue that we do not resolve -- that authority is bounded by the due process rights of parents. As we have noted, DHS has conceded that, to the extent that the due process rights of parents are implicated in this case, the record is inadequate.

DHS's suggestion that we should narrow our focus and address the authority of the juvenile court as set out solely in the particular statutes that the parties have cited is untenable. In assessing the authority that those statutes confer -- indeed, in addressing any issue of statutory construction -- we do not address each statute in isolation. Rather, we address those statutes in context, including other parts of the statute at issue. *See, e.g.*, *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e

10

do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.").

DHS insists -- and the Court of Appeals agreed -- that father failed to preserve a contention that the trial court's order violated his parental rights under the Due Process Clause of the Fourteenth Amendment. Our decision, however, is not based on an unpreserved constitutional claim. Rather, it is based on our obligation to interpret the statutes correctly, which includes an obligation to consider relevant context, regardless of whether it was cited by any party. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). In this case, that relevant context includes ORS 419B.090(4), which makes clear that the due process rights of parents are always implicated in the construction and application of the provisions of ORS chapter 419B. Accordingly, in light of the DHS acknowledgment of the inadequacy of the record for review, we reverse the opinion of the Court of Appeals and vacate the order of the juvenile court.

The decision of the Court of Appeals is reversed. The order of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.

11