Argued and submitted August 7, affirmed October 7, 2020

In the Matter of M. M. P.,
fka M. M. H., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*
M. M. P.,
fka M. M. H.,
*Respondent,*
*v.*
T. M. G.,
fka T. M. P.,
*Appellant.*

Lane County Circuit Court
18JU06158; A173323

475 P3d 936

Mother appeals a permanency judgment, asserting that the juvenile court lacked authority to order her to make two of her children, who were not wards of the juvenile court or otherwise subject to its control, available for visitation with mother's daughter, M, who was a ward of the court. *Held*: Mother did not preserve the arguments that she advances on appeal. Accordingly, the Court of Appeals did not consider the merits of her arguments.

Affirmed.

Jay A. McAlpin, Judge.

Elena C. Stross, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Erica Mae Hayne Friedman argued the cause for respondent M. M. P. Also on the brief was Youth, Rights & Justice.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Before DeVore, Presiding Judge, and Ortega, Judge, and DeHoog, Judge.

DeHOOG, J.

Affirmed.

**DeHOOG, J.**

Mother appeals a permanency judgment, asserting that the juvenile court lacked authority to order her to make two of her children, who were not wards of the juvenile court or otherwise subject to its control, available for visitation with mother's daughter, M, who was a ward of the court. Mother contends that the juvenile court had no authority to enter orders in regard to children who were not subject to its dependency jurisdiction and that, in light of the presumption that parents act in the best interests of their children, entry of the order without evidence to overcome that presumption violated her due process rights as recognized in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000). In response, the Department of Human Services (DHS) takes no position regarding the merits of mother's arguments; DHS argues, however, that those arguments are not preserved for appeal. Child appears on appeal and similarly contends that mother's arguments are largely unpreserved. In any event, child contends, mother's arguments lack merit. For the reasons that follow, we conclude that the arguments mother advances on appeal are not preserved. Accordingly, we affirm.

The relevant facts are largely procedural and undisputed for purposes of this appeal. In September 2018, the juvenile court took jurisdiction as to mother's child, M, who was 14 years old at the time. As bases for the court's jurisdiction, mother admitted to allegations that her "mental health interfere[d] with her ability to safely parent" M and that, "[d]espite having participated in services to improve mother's knowledge of domestic violence, she [was] unable to demonstrate that she can safely parent the child." In addition to M, mother has two younger children: N, who is in the custody of his father, and A, who is in mother's custody.[1]

The permanency hearing at issue occurred in December 2019. At that time, following a series of unsuccessful in-home and out-of-home placements, M was in nonrelative substitute (foster) care. Due to M's behavior while in

---

[1] M, N, and A all have different fathers. M's father, as to whom the juvenile court also took jurisdiction on the basis of admissions, is not a party to this appeal.

those placements, which mother believed made M a safety threat to her younger children, mother was not willing to take M back into her home. Ultimately, the juvenile court changed M's permanency plan from reunification to guardianship without objection from either parent.[2]

At the permanency hearing, the juvenile court considered child's request under ORS 419B.337(3) for an order requiring mother "to facilitate contact/visitation between [M] and her siblings," A and N. In support of the motion, child's attorney attached a declaration in which he explained the following:

> "I have met with my client, [M], on multiple occasions where she has requested contact with her half siblings: [N] and [A]. Consequently, I have requested that DHS caseworker, Jennifer Brown, arrange contact/visitation time between [M] and her brothers. I have been informed by Ms. Brown that she has tried to arrange contact and/or visitation with [M's] brothers and [mother] has not cooperated with that process. As a result, [M] has had very limited contact with her brothers[,] which is detrimental to her mental health and well-being."

Counsel further explained that mother had legal custody of A and "liberal parenting time with" N, and so had "access" to those children so as to facilitate visits. In addition to counsel's representations regarding the significance of visitation to M, the record included a psychological evaluation of M completed shortly before the permanency hearing. In his report, the evaluator, Dr. Sorensen, described mother's lack of a protective relationship with M—and, in particular, mother's failure to protect M and her siblings from the collateral effects of domestic violence—which, he opined, had "led to [M's] lasting separation from her mother and younger siblings." Sorensen further explained:

> "[M's] contact with her younger siblings remains very limited, and she has no real relationship with her father either. This has left [M] adrift[,] without firm anchor for her future, living in a foster home with someone known years before but not recently."

---

[2] The juvenile court's decision to change M's permanency plan to guardianship is not at issue on appeal.

DHS similarly advocated for contact between M and her siblings, as did the Citizen Review Board. Finally, M's court-appointed special advocate (CASA), testified at the hearing that mother's unwillingness to allow for sibling visitation was "detrimental to both the boys and to [M]."

Mother opposed child's motion. Through counsel, she argued:

"My client has always said that she would allow visitation between the boys and [M] when it's appropriate and safe and there are appropriate facilitators. So my client objects to any Court order for visitation between the boys and [M]. Those children are not wards of this Court. Those children have other fathers. One of the children my client does not even have custody of, and certainly those fathers have a say in what contact with [M] would look like.

"You know, it's important to support children on their journey, but there are consequences for people's actions. And sometimes rifts in families are a consequence of our actions. And so that's where we are today, and so I will just put my objection on the record to any order for visitation."

Later in the proceeding, when the juvenile court indicated its intent to grant child's motion for an order compelling visitation with her siblings, mother's counsel stated that she would "just renew [her] objection," then elaborated:

"[Y]our honor. I think that puts my client in an impossible position, and I have watched this case continue to really narrow [its] focus on her and what she's done wrong, and I just—I don't think it's appropriate, and I do not know how the Court can expect my client to facilitate those visits, to communicate with the fathers of these children[]. The fathers of these children have a position on this. They have custodial rights. I just—I guess I'll just renew my objection at this time."

Notwithstanding mother's objections, the juvenile court adhered to its decision to grant child's motion to require mother "to facilitate contact/visitation between the child, [M], and her siblings." This appeal followed.

On appeal, mother argues that the Supreme Court's decision in *Dept. of Human Services v. J. R. F.*, 351 Or 570, 273 P3d 87 (2012), precluded the juvenile court from

granting child's motion and compelling mother to make A and N available for visitation with M. In *J. R. F.*, a case factually similar to this one, the court considered whether the juvenile court had authority to order a father, whose child was a ward of the court, to allow the ward to visit with the father's other children (two of whom were related to the ward), who were not wards of the court. 351 Or at 572. When the case was before us, we had held that ORS 419B.337(3), which authorizes orders "regarding visitation by the ward's parents or siblings," was sufficiently broad to support the juvenile court's order. *Id*. at 576 (discussing Court of Appeals decision). We had also rejected the father's argument that construing the statute to confer such authority would violate his due process rights, concluding that that argument was unpreserved. *Id*.

The Supreme Court reversed our decision. It held that, whatever authority ORS 419B.337(3) might confer, the court was required to construe it in light of a parent's protected liberty interests under the Fourteenth Amendment to the United States Constitution. *Id*. at 578 (citing ORS 419B.090(4) ("The provisions of this chapter shall be construed and applied in compliance with federal constitutional limitations on state action * * * with respect to interference with the rights of parents to direct the upbringing of their children[.]")). Those protected rights include "the rights of parents to make decisions concerning the care, custody, and control of their children." *J. R. F.*, 351 Or at 578; *see also Troxel,* 530 US at 66 (recognizing the "fundamental right of parents to make decisions concerning the care, custody, and control of their children"); *id*. at 68 (stating "there is a presumption that fit parents act in the best interests of their children"). Ultimately, the court in *J. R. F.* concluded that the record before it was insufficient to establish that the order was consistent with those rights, and it vacated the court's order. 351 Or at 578-79.

In so holding, the Supreme Court appears to have relied on the principle, gleaned from *Troxel*, that, because a parent is presumed to act in the best interests of his or her children, a court may not override a parent's decision regarding care, custody, or control, unless "there is evidence sufficient to overcome that presumption." *O'Donnell-Lamont*

*and Lamont*, 337 Or 86, 120, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) (discussing *Troxel*). Mother relies on the same principle here. She argues that, because she has not been found to be an unfit parent in regard to A or N, her parenting decisions regarding them—including whether to allow M contact with them—are presumed to be in their best interests.[3] Thus, she argues, there must be evidence to overcome that presumption and, here, she contends, that evidence is lacking.

In response, child observes that mother preserved her broad argument that the juvenile court lacked authority to issue the order. Child argues, however, that mother did not preserve her argument that the court's order violated her constitutional rights or that the court was required to make certain findings before overriding her parenting decisions regarding A and N. As child points out, mother's authority argument was premised solely on A and N not being wards of the court. Ultimately, child contends, even assuming that the juvenile court was required to presume that mother was acting in A's and N's best interests, the record was sufficient to rebut that presumption. As noted, the state takes no position on the merits of mother's arguments but, like child, asserts that those arguments are not preserved.

We conclude that mother did not preserve the arguments that she now makes on appeal. We typically will not consider unpreserved claims of error, *i.e.*, claims that a party has not first raised in the trial court. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); ORAP 5.45(1). As we have explained,

> "We evaluate whether an issue is adequately preserved in light of the underlying purposes of the preservation rule—'to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record.' *State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) (citing *Peeples v. Lampert*, 345

---

[3] In recounting mother's arguments, we note that, for purposes of *Troxel* and its progeny, we understand "fitness" to refer to that term as it is used in *Troxel*, and not as it is used in ORS 419B.502 (relating to standard for terminating parental rights). *See Dept of Human Services v. S. M.*, 256 Or App 15, 24 n 7, 300 P3d 1254 (2013), *aff'd*, 355 Or 241, 323 P3d 947 (2014) (so distinguishing).

Or 209, 219-20, 191 P3d 637 (2008)). In practical terms, a party's argument to the trial court must be 'specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.' *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)."

*State v. Gray*, 286 Or App 799, 806, 401 P3d 1241 (2017), *rev den*, 362 Or 482 (2018). Here, mother's objection to child's motion did not serve those purposes. Although child concedes that mother challenged, in a general sense, the juvenile court's authority to issue the requested order, we do not agree.[4] The focus of mother's arguments was on the challenges that the order would place on her by, among other things, requiring her to communicate with A's and N's fathers, who had parenting rights separate from, and potentially at odds with, her own. True, mother stated, without elaboration, that "[t]hose children are not wards of this [c]ourt." However, that unadorned observation would not have alerted the juvenile court or the opposing parties to the arguments that mother now advances on appeal—that the nonward status of her younger children raised a presumption that her decisions on their behalf were in their best interests and that, as a result, the court had no lawful authority to order her to make those children available for visitation.

To understand mother's argument in the way that she presents it on appeal, the juvenile court would have had to infer that, by noting the nonward status of those children, mother was arguing (1) that she was a "fit" parent with regard to them and therefore entitled to the presumption, (2) that under the Due Process Clause, the juvenile court had no authority to override her parenting decisions until the presumption had been rebutted, and (3) that the evidence was insufficient to overcome the presumption. In our view, the mere observation that the younger children were not wards of the court was insufficient to trigger anything

---

[4] In any event, even if no party disputed preservation, that would not alleviate our duty to verify that mother preserved her arguments for appeal. *See State v. Savage*, 305 Or App 339, 342, 470 P3d 387 (2020) ("[W]e have an independent obligation to determine whether an argument advanced on appeal was preserved at trial." (Internal quotation marks omitted.)).

close to that understanding. *Cf. id.* (explaining that "the presence of a common thread between an objection at trial and an argument on appeal does not satisfy the preservation requirement if the two arguments are qualitatively different" (internal quotation marks omitted)).

Stated differently, the juvenile court would not have understood mother's argument to be that it could not issue the order unless it first evaluated whether the evidence before it was sufficient to overcome the presumption. As a result, it had no opportunity to correct its course of action—if, in fact, correction was warranted—nor were the opposing parties put on notice of the potential need to make additional arguments or further develop the evidentiary record. Under those circumstances, we cannot say that the purposes of preservation were satisfied. That is of particular significance here, where the record may well have developed differently had mother brought the alleged deficiencies in the process to the attention of the court and parties.

Because mother did not preserve the arguments that she advances on appeal, we will not consider them. Accordingly, we affirm.[5]

Affirmed.

---

[5] In light of that disposition, we express no opinion as to the merits of mother's arguments regarding the court's authority to issue the disputed order or child's argument that, if the court was required to apply a presumption that mother acted in the best interests of her children, the evidence here was sufficient to overcome that presumption.