Argued and submitted November 30, 2020; in Case No. 20JU01464, reversed; in Case No. 20JU01466, affirmed April 7, 2021

In the Matter of H. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. C.
and B. W.,
*Appellants.*

Douglas County Circuit Court
20JU01464;
Petition Number 00463956;
A174202 (Control)

In the Matter of A. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. C.,
*Appellant.*

Douglas County Circuit Court
20JU01466;
Petition Number 00449833;
A174203

486 P3d 51

In this consolidated dependency case, mother and father separately appeal from jurisdictional judgments in which the juvenile court made their children, A and H, wards of the court. Mother is the biological mother of only H and, thus, challenges the juvenile court's jurisdiction only as to H, asserting that the Department of Human Services presented legally insufficient evidence to support jurisdiction. Father is the biological father of both A and H and contends, in a combined argument, that he did not receive statutorily required notice for the jurisdictional hearing, and, as a result, the juvenile court erred in conducting the hearing and taking jurisdiction of the children in his absence. *Held*: The evidence in support of the allegations against mother was insufficient to support jurisdiction as to H. However, father's challenge was unpreserved and did not qualify as plain error.

In Case No. 20JU01464, reversed. In Case No. 20JU01466, affirmed.

Frances Elaine Burge, Judge.

Elena Stross, Deputy Public Defender, argued the cause for appellant C. C. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

George W. Kelly argued the cause and filed the brief for appellant B. W.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

In Case No. 20JU01464, reversed. In Case No. 20JU01466, affirmed.

**ORTEGA, P. J.**

In this consolidated dependency case, mother and father separately appeal from jurisdictional judgments in which the juvenile court made their children, A and H, wards of the court. Mother is the biological mother of only H and, thus, challenges the juvenile court's jurisdiction only as to H, asserting that the Department of Human Services (DHS) presented legally insufficient evidence to support jurisdiction. Father is the biological father of both A and H and contends, in a combined argument for both children, that he did not receive statutorily required notice for the jurisdictional hearing and, as a result, the juvenile court erred in conducting the hearing and taking jurisdiction of the children in his absence. We conclude that the evidence in support of the allegations against mother was insufficient to support jurisdiction as to H, and accordingly reverse that judgment. However, father's challenge is unpreserved and does not qualify as plain error; accordingly, we affirm the jurisdictional judgment as to A.

We review the facts found by the juvenile court to determine whether they are supported by any evidence and then to determine whether, as a matter of law, those facts, together with facts impliedly found by the juvenile court, provide a basis for juvenile court jurisdiction under ORS 419B.100(1)(c). *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010).

In March 2020, DHS filed petitions for jurisdiction over 14-year-old A and nearly five-year-old H. It is undisputed that father was served a copy of the petitions along with a statutorily compliant summons. The summons informed father regarding the time and location of the hearing and directed him to personally appear. The summons further provided notice to father in bold font that, if he did not personally appear before the juvenile court as directed or if he did not appear at any subsequent court-ordered hearing, "the court may proceed in [his] absence without further notice and take jurisdiction of the [children] at the time of the above hearing or on a future date." Father appeared as summoned, at which point the juvenile court held a shelter hearing. Following that hearing, father appeared as ordered

at a settlement conference in April, after which the court scheduled a jurisdiction hearing for June 3. Father does not dispute DHS's representations that the court ordered him to appear on that date.

Father did not appear at the June 3 hearing. DHS had understood that father was prepared to make admissions that day, and his attorney had no information as to why he did not appear to make admissions as expected. The juvenile court suggested setting a *prima facie* hearing, giving father another opportunity to appear, and counsel for father and DHS expressed assent to that plan. The court asked father's counsel how much time would be needed to secure father's presence, and counsel requested two weeks. All parties agreed to a hearing date nine days later, on June 12.

The juvenile court then proceeded to address the jurisdiction allegations against mother as to H. DHS's amended petition asserted the following:

> "The condition and circumstances of the above-named minor are such as to endanger the welfare of the person or of others, as follows:
>
> "* * * * *
>
> "F.   The mother's chaotic lifestyle and residential instability interfere with her ability to safely parent the child;
>
> "G.   The mother's substance abuse interferes with her ability to safely parent the child;
>
> "H.   The mother needs the assistance of DHS to learn the skills necessary to safely parent the child;
>
> "I.   The mother is unable to be a safe parenting resource for the child;
>
> "J.   The mother's cognitive issues interfere with her ability to safely parent the child."

During the hearing, DHS focused on mother's lack of relationship with H. Mother admitted that she was a stranger to H but expressed that she was willing to "jump through any hoop" to reestablish their relationship. Before trial, mother had a visit with H after having had barely any contact with her. Mother testified that, by the time H

was about two years old, father "pretty much took her," and mother had been unable to locate them.

Mother has a son, then four months old, with her husband. Mother and her husband previously lived in a shelter and, before that, in a motorhome. While they were living at the shelter, a case manager helped them locate their current home and find rent assistance. About a month after living in Molalla, mother left Oregon with her newborn son and moved to Washington to live with a friend for three months because she had concluded (mistakenly, as it turned out) that a clear bag of sugar she found on the counter was methamphetamine. Mother testified that the move was impulsive, but that she and her husband had since reconciled; she and their son had returned to the home in Molalla shortly before the hearing. They had at least six months left on their lease, and mother was in the process of seeking additional rental assistance.

During her stay in Washington, mother was actively working on setting up services for herself and also for H and even for A, who is not her child. She testified that she was in the process of getting those services—including domestic violence counseling and support groups, parenting classes, and a "power and control" course—transferred to Oregon with the help of one of her advocates. Mother described herself as having endured a long history of domestic violence, but that it was not an issue with her current husband and that she did not "put up with that anymore." She disclosed a history of depression but noted that "it [had not] been an issue for many years." She also testified that she was able to handle her anxiety a lot better than when H was an infant. She explained that, when H was about three months old, she was "dealing with a lot of people who were not good at the time" and she had a "couple losses in the family" during that period. However, mother stated that she is "able to function normally" and was "able to get things done without getting frustrated." She stated that she was "able to do a lot of things now that [she] wasn't able to before."

Right before the jurisdictional hearing, mother participated in a drug and alcohol evaluation, in which she

voluntarily offered that she uses marijuana about twice a month to treat her sclerosis, explaining that she does not like the way prescription and over-the-counter drugs make her feel. She testified that, other than marijuana, she did not have any drugs or alcohol in her system. She had been "clean" from methamphetamine for almost three years.

The juvenile court concluded that DHS had met its burden as to the allegations in paragraphs F, H, and I of the petition and took jurisdiction of H on those bases. In finding that mother's chaotic lifestyle and residential instability interfered with her ability to safely parent (paragraph F), the juvenile court explained:

> "The child doesn't know mother as her mother at this time. She *** even admitted that she realizes she's basically a stranger to her child. *** A child who has not had her mother in her life consistently for at least three years and almost probably more like four years of the five years this child has, has lived."

The court further explained that it did not know how mother's changes in residence and her reaction to what she mistakenly thought was methamphetamine in her home "could be deemed anything but unstable and, frankly, chaotic. It *** showed an impulse behavior that is concerning [as to how she] would be with H."

In support of the allegation that mother required the assistance of DHS to learn the skills necessary to safely parent H (allegation H), the juvenile court pointed to the lack of relationship between H and mother. The court noted that mother "admitted that she does need assistance." Finally, in support of the allegation that mother is unable to be a safe parenting resource (allegation I), the court referred again to the evidence of mother's "impulsivity, her chaotic lifestyle, and the instability that has been in her life up until even just a week ago."

Father again failed to appear for the June 12 hearing. When asked if she was prepared to move forward, father's counsel replied, "I don't really have anything for the court at this time." The juvenile court then proceeded to conduct a *prima facie* hearing as to father's case.

The allegations against father as to both children were as follows:

"The condition and circumstances of the [children] are such as to endanger the welfare of the person or of others, as follows:

"A.   The father's substance abuse interferes with his ability to safely parent the child;

"B.   The father's mental health issues interfere with his ability to safely parent the child;

"C.   The father's erratic, volatile and threatening behaviors interfere with [h]is ability to safely parent the child;

"D.   The father's chaotic lifestyle and residential instability interfere with his ability to safely parent the child;

"E.   Despite prior services by DHS, the father has been unable to ameliorate the barriers in order to safely parent the child."

Most of the evidence to support those allegations was presented through a DHS permanency worker; the substance of that testimony is not pertinent to the issues on appeal. At the conclusion of DHS's closing argument, father's counsel argued that DHS had not put on evidence that father was, in fact, served with notice of the hearing. DHS responded that father had been served with the summons and petition in March and had been present in court on two occasions, including when the original date of June 3 was set at the settlement conference and, when he failed to appear on June 3, the court had found him in default. The juvenile court concluded that father had been notified of the June 3 hearing and had been given an additional opportunity to appear beyond that. The court concluded that DHS had met its *prima facie* burden to prove the allegations in paragraphs A, B, C, and D, and entered judgments taking jurisdiction of both A and H.

Father appeals the judgments taking jurisdiction over both A and H, and mother appeals the judgment for H. We begin with mother's appeal. The juvenile court found that three jurisdictional bases were supported: (1) that mother "experiences a 'chaotic lifestyle' and 'residential

instability' to such an extent that it poses a danger to [H]";
(2) that mother "needs assistance from DHS to learn the
skills she requires in order to safely parent [H]"; and (3) that
mother "is unable to be a safe parenting resource" for H.
Mother argues that the evidence presented at the hearing
was legally insufficient to support those findings, particu-
larly that mother's circumstances pose a current risk of
harm to H. Mother concludes:

> "[T]his case is ultimately about [mother's] lack of a relation-
> ship with [H] and the perception by DHS and the [juvenile]
> court that it is best for [H] for jurisdiction to be established.
> But what is best for [H] and what poses a danger to [H] are
> not the same thing. Jurisdiction applies to children whose
> circumstances cause them to be endangered."

DHS repeats its arguments about mother's various moves,
including her impulsive move to Washington, and her lack
of relationship with H, and asserts that its assistance is
needed for mother to gradually reestablish a relationship
with H.[1] We conclude that the court's evidence was legally
insufficient to support the juvenile court's conclusion that
there is a "reasonable likelihood of harm" to H's welfare.

The juvenile court has jurisdiction over a child
"[w]hose condition or circumstances are such as to endanger
the welfare of the [child] or of others[.]" ORS 419B.100(1)(c).
The exercise of jurisdiction is supported when, under the
totality of the circumstances, there is a reasonable likeli-
hood of harm to the welfare of the child. *State ex rel Juv.
Dept. v. Smith*, 316 Or 646, 653, 853 P2d 282 (1993). A child's
welfare is endangered if the child is exposed to conditions
or circumstances that present a current threat of serious
loss or injury and there is a reasonable likelihood that the
threat will be realized. *Dept. of Human Services v. C. J. T.*,
258 Or App 57, 61, 308 P3d 307 (2013). DHS has the bur-
den "to establish a nexus between the allegedly risk-causing
conduct or circumstances and risk of harm to the child, and
that the risk of harm is present at the time of the hearing

---

[1] At oral argument, DHS argued for the first time that, father, an unsafe
individual, could again take control of H and prevent mother from accessing her,
as he did before, if H is not made a ward of the court. We do not consider that new
argument, which is not based on the allegations in the petition.

and not merely speculative." *Dept. of Human Services v. E. M.*, 264 Or App 76, 81, 331 P3d 1054 (2014). Under those standards, the evidence in this case is legally insufficient to support the juvenile court's jurisdictional determination.

As to the first allegation, the evidence of mother's prior residences and current living situation do not demonstrate residential instability that poses a risk of harm to H. Mother's prior living situations did not establish a risk of harm to H and, as to her current circumstances, mother had an active lease for at least six additional months in an evidently suitable home. The related finding that mother's "chaotic lifestyle" posed a risk of harm to H was likewise unsupported. Although mother may have engaged in impulsive decision-making in moving to Washington, she did so because of a concern, albeit an unfounded one, about exposure to methamphetamine, and relocated to a place of safety with a friend, reaching out for supportive services. That evidence is legally insufficient to establish a risk of harm to H.

The juvenile court found that the remaining two allegations—that mother needed assistance to safely parent and that she was not a safe parenting resource—were proved largely based on mother's lack of a relationship with H, in addition to the concerns about mother's alleged chaotic lifestyle and residential instability. However, the lack of a relationship, standing alone, does not pose a nonspeculative risk of harm to a child. Indeed, as mother observes, DHS regularly removes children from placement with their parents to live with foster parents who are strangers to them; here, DHS did not establish that the lack of a relationship with mother would create a nonspeculative threat of harm to H.

Accordingly, we conclude that the record lacks evidence sufficient to support the juvenile court's exercise of jurisdiction as to H and therefore reverse that jurisdictional judgment.

We turn to father's appeal, as it relates to the juvenile court's jurisdiction over A. Father contends that, when the juvenile court scheduled the *prima facie* hearing on June 12 due to his absence on June 3, it did not make an oral or written order that notified father of the time, place, and

purpose of the jurisdictional hearing, as required by ORS 419B.816. Without that notice, father contends that the juvenile court did not have the authority to conduct the hearing and take jurisdiction of A in his absence, under ORS 419B.815[2] and ORS 419B.816.[3] Father argues that his claim of error was preserved, based on his counsel's argument at

---

[2] ORS 419B.815 provides, in relevant part:

"(1) A court may make an order establishing jurisdiction under ORS 419B.100 only after service of summons and a true copy of the petition as provided in ORS 419B.812, 419B.823, 419B.824, 419B.827, 419B.830, 419B.833 and 419B.839.

"(2) A summons under this section must require one of the following:

"(a) That the person appear personally before the court at the time and place specified in the summons for a hearing on the allegations of the petition;

"(b) That the person appear personally before the court at the time and place specified in the summons to admit or deny the allegations of the petition; or

"(c) That the person file a written answer to the petition within 30 days from the date on which the person is served with the summons.

"*****

"(5) If the summons requires the person to appear before the court to admit or deny the allegations of the petition or requires the person to file a written answer to the petition, the summons must advise the person that, if the person contests the petition, the court:

"(a) Will schedule a hearing on the allegations of the petition and order the person to appear personally; and

"(b) May schedule other hearings related to the petition and order the person to appear personally.

"*****

"(7) If a person fails to appear for any hearing related to the petition, or fails to file a written answer, as directed by summons or court order under this section or ORS 419B.816, the court may establish jurisdiction without further notice, either on the date specified in the summons or order or on a future date, and may take any other action that is authorized by law including, but not limited to, making the child a ward of the court and removing the child from the legal and physical custody of the parent or other person having legal or physical custody of the child."

[3] ORS 419B.816 provides, in relevant part:

"If the person appears in the manner provided in ORS 419B.815(2)(b) or (c) and the person contests the petition, the court, by written order provided to the person in person or mailed to the person at the address provided by the person, or by oral order made on the record, shall:

"(1) Inform the person of the time, place and purpose of the next hearing or hearings related to the petition;

"(2) Require the person to appear personally at the next hearing or hearings related to the petition;

"*****

the conclusion of the June 12 hearing. Alternatively, father argues that the juvenile court committed plain error in conducting a jurisdictional hearing in his absence, and that we should exercise our discretion to review and correct the juvenile court's error.

DHS responds that we should not reach father's arguments, because the assignments of error are not preserved and father invited any error. DHS points out that father's counsel did not object at the June 3 hearing to the court's suggestion that the hearing be set over to June 12 and, in fact, agreed to the setover. In addition, DHS argues that counsel's use of the word "served" was a reference to the service of summons, which was not required at that stage of the proceeding, and counsel's "after-the-fact observation would not have alerted the [juvenile] court to the argument father is now making on appeal." DHS maintains that, in all events, the juvenile court did not err, because father was in default as of June 3 and ORS 419B.815(7) "allowed the juvenile court to take jurisdiction without further notice and without the parent's participation once that parent fails to appear as ordered, regardless of when the hearing occurs." Finally, DHS argues that father's claims do not constitute plain error and, even if they did, we should not exercise our discretion to correct any error.

The determination of whether the juvenile court was authorized to proceed with the hearing in father's absence is a legal question, which we review for legal error. *Dept. of Human Services v. M. H.*, 266 Or App 361, 364, 337 P3d 976 (2014). In general, a claim of error that has not been raised in the lower court will not be considered on appeal. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). As we have explained,

> "[w]e evaluate whether an issue is adequately preserved in light of the underlying purposes of the preservation

---

"(5) Inform the person that, if the person fails to appear as ordered for any hearing related to the petition, the court may establish jurisdiction without further notice, either on the date specified in the summons or on a future date, and may take any other action authorized by law including, but not limited to, making the child a ward of the court and removing the child from the legal and physical custody of the parent or other person having legal or physical custody of the child."

rule—to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record."

*Dept. of Human Services v. T. M. G.*, 307 Or App 117, 123, 475 P3d 936 (2020). Ultimately, preservation decisions will turn on whether the policies underlying the preservation rule have been adequately met. *State v. Parkins*, 346 Or 333, 341, 221 P3d 262 (2009).

We begin by addressing whether father adequately preserved his claim of error below when his counsel stated, "I don't think there is any evidence put on that said father was, in fact, served," after DHS presented its *prima facie* case. We agree with DHS's contention that counsel's statement would not have alerted the juvenile court to the argument that father is now making on appeal. In addition, counsel's statement did not foster a full development of the record for us to review his argument. For example, counsel's statement did not alert the juvenile court or DHS to father's argument that ORS 419B.815(7) did not apply in this situation and that the court lacked authority to conduct a jurisdictional hearing in his absence. Ultimately, counsel's arguments below were not specific enough to ensure that the juvenile court could identify and correct the alleged error.

Although not preserved, we may still review the claimed error if it qualifies as plain error. To be "plain," the error must (1) be an error of law; (2) be obvious, meaning that the legal point is not reasonably in dispute; and (3) appear on the face of the record. ORAP 5.45(1); *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Even then, we must decide whether to exercise our discretion to correct a plain error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). Factors guiding our discretion include "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way." *Id.*

Here, father's asserted error is not plain, because it is reasonably in dispute. Father acknowledges that he was properly served with notice of the June 3 jurisdictional hearing and that he did not appear at that hearing. He maintains, however, that he needed to be served with notice of the June 12 jurisdictional hearing for the court to have authority to proceed with that hearing in his absence. That particular legal contention is reasonably in dispute and not amenable to our plain error review.

ORS 419B.815(7) provides:

"If a person fails to appear for *any hearing related to the petition*, or fails to file a written answer, *as directed by summons or court order under this section or ORS 419B.816* [providing for notice to a person contesting a petition to establish jurisdiction], *the court may establish jurisdiction without further notice*, *either on the date specified in the summons or order or on a future date,* and may take any other action that is authorized by law including, but not limited to, making the child a ward of the court and removing the child from the legal and physical custody of the parent or other person having legal or physical custody of the child."

(Emphases added.) The plain text of that statute suggests that the juvenile court could, after father failed to appear for the properly noticed June 3 jurisdictional hearing, proceed to establish jurisdiction over the children at the June 12 hearing without further notice to father.

Father argues that we have previously ruled in the context of termination of parental rights trials, under statutes analogous to ORS 419B.815 and ORS 419B.816, "that a parent's failure to appear does not imbue the trial court with authority in perpetuity to adjudicate a petition in the parent's absence at any future date." *See Dept. of Human Services v. K. M. J.*, 276 Or App 823, 825, 829-31, 370 P3d 1258 (2016) (reversing as plain error the court's termination of the mother's parental rights in her absence in light of DHS's concession that she did not receive proper notice under ORS 419B.819 and ORS 419B.820); *Dept. of Human Services v. A. W.*, 274 Or App 493, 361 P3d 58 (2015) (reversing as plain error the court's termination of the mother's parental rights in her absence in light of DHS's concession that the mother could not be held in default based on her

failure to appear at a status check and that she did not receive notice of the *prima facie* hearing date); *see also Dept. of Human Services v. G. S.*, 304 Or App 542, 543, 466 P3d 716 (2020) ("[T]he court erred because it did not provide any type of notice of the permanency hearing to mother as it was required to do under ORS 419B.473(2)."). However, those cases, which did not interpret ORS 419B.815 and ORS 419B.816, and specifically did not address the text in ORS 419B.815(7) that appears to apply here, do not establish that the juvenile court plainly erred in this case.

Accordingly, we reverse the juvenile court's dependency jurisdiction judgment as to H and affirm the dependency jurisdiction judgment as to A.

In Case No. 20JU01464, reversed. In Case No. 20JU01466, affirmed.