220 July 7, 2023 No. 18

IN THE SUPREME COURT OF THE
STATE OF OREGON

Danny BUNDY,
*Petitioner on Review,*

*v.*

NUSTAR GP, LLC,
*Respondent on Review,*
*and*

SHORE TERMINALS LLC,
*Defendant.*

(CC 110810280) (CA A169235) (SC S069448)

On review from the Court of Appeals.*

Argued and submitted December 1, 2022.

John Burgess, Law Offices of Daniel Snyder, Portland, argued the cause for petitioner on review. Carl Post filed the brief for petitioner on review.

Daniel R. Bentson, Bullivant Houser Bailey PC, Seattle, argued the cause and filed the brief for respondent on review.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Flynn, Chief Justice, and Duncan, Garrett, and DeHoog, Justices, and Balmer and Walters, Senior Judges, Justices pro tempore.**

DeHOOG, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

––––––––––––––
  * Appeal from Multnomah County Circuit Court, Christopher J. Marshall, Judge. 317 Or App 193, 506 P3d 458 (2021).

  ** Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case. Bushong and James, JJ., did not participate in the consideration or decision of this case.

**DeHOOG, J.**

This case considers whether the legislature intended to create an exception to ORS 656.018, the so-called "exclusive remedy" provision of the Workers' Compensation Law, for injured workers whose claims have been deemed noncompensable on "major contributing cause" grounds.[1] Plaintiff, who brought the negligence action at issue here against his employer (defendant), acknowledges that the Workers' Compensation Law generally immunizes covered employers against civil liability for injuries arising out of a worker's employment. Plaintiff argues, however, that his case falls within a statutory exception to that rule and that the trial court and Court of Appeals, both of which ruled in defendant's favor on that legal question, erred in concluding otherwise. We conclude that plaintiff's statutory argument fails, and that the trial court and Court of Appeals therefore did not err.

At issue in this case is whether ORS 656.019, which imposes certain procedural requirements on cases such as plaintiff's, also serves as a "substantive exception" to ORS 656.018's exclusive-remedy provision—that is, does ORS

---

[1] ORS 656.018 provides, in part:

"(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017 (1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter.

"* * * * *

"(2) The rights given to a subject worker and the beneficiaries of the subject worker under this chapter for injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment are in lieu of any remedies they might otherwise have for such injuries, diseases, symptom complexes or similar conditions against the worker's employer under ORS 654.305 to 654.336 or other laws, common law or statute, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury, disease, symptom complex or similar condition.

"* * * * *

"(7) The exclusive remedy provisions and limitation on liability provisions of this chapter apply to all injuries and to diseases, symptom complexes or similar conditions of subject workers arising out of and in the course of employment whether or not they are determined to be compensable under this chapter."

656.019 provide a statutory exception that permits a civil negligence action to proceed under plaintiff's circumstances, or does it merely impose an exhaustion requirement for actions that are otherwise permitted?[2] In answering that question, we apply our familiar approach to discerning legislative intent. We note at the outset, however, that we must also take into account the somewhat complex interplay between two bodies of case law that intersect at ORS 656.019: our case law regarding workers' compensation, and our case law regarding the "remedy clause" found in Article I, section 10, of the Oregon Constitution. We specifically must determine whether, in enacting ORS 656.019, the legislature intended to provide the remedy required by *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), *overruled in part by Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016), or, instead, intended only to establish procedural requirements for the type of claims identified in *Smothers*. As discussed below, we conclude that the legislature intended to establish procedural requirements for claims that it then believed were constitutionally required under our case law, but that it did not intend to create its own substantive exception applicable to cases such as plaintiff's. Accordingly, we affirm.

## I.   BACKGROUND

A.   *Facts and Procedural History*

Having previously come before this court, this case has a lengthy procedural history. The Court of Appeals accurately described that history in full. *Bundy v. Nustar GP LLC*, 317 Or App 193, 195-200, 506 P3d 458 (2022) (*Bundy III*). We limit our recitation of the facts and procedural history to the most salient points for the purposes of this opinion.

---

[2]  ORS 656.019 provides, in part:

"(1)(a)  An injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final. The injured worker may appeal the compensability of the claim as provided in ORS 656.298, but may not pursue a civil negligence claim against the employer until the order affirming the denial has become final.

"(b)  Nothing in this subsection grants a right for a person to pursue a civil negligence action that does not otherwise exist in law."

In the current round of litigation, plaintiff appeals a judgment dismissing his complaint for failure to state a claim, ORCP 21 A(1)(h). Thus, on review, we accept the facts alleged in the operative complaint as true. *Philibert v. Kluser*, 360 Or 698, 700, 385 P3d 1038 (2016). We stated the underlying facts under the same standard in our previous decision:

> "While employed by defendant as a terminal operator, plaintiff was assigned to stay and monitor the air quality from malfunctioning machinery without being given safety equipment, and he was exposed to dangerous levels of diesel, gasoline and ethanol fumes. After that incident, defendant initially accepted a workers' compensation claim for 'non-disabling exposure to gasoline vapors.' Later, plaintiff asked defendant to accept and pay compensation for additional conditions arising out of the same incident, including 'somatization disorder' and 'undifferentiated somatoform disorder' (which we refer to collectively as 'somatoform disorders'). Defendant specified that it was treating each of plaintiff's subsequent requests as a 'consequential condition claim' and was denying those claims on the basis that plaintiff's work exposure was not the major contributing cause of the subsequent conditions. Plaintiff challenged those denials through the workers' compensation system, but he was unable to establish that the work incident was the major contributing cause of his somatoform disorders. The Workers' Compensation Board ultimately issued a final order determining that the disorders were not compensable conditions because plaintiff failed to establish that his work-related incident was the major contributing cause."

*Bundy v. NuStar GP, LLC*, 362 Or 282, 285, 407 P3d 801 (2017) (*Bundy II*) (footnote omitted).

While plaintiff's workers' compensation claims were pending, he initiated this civil action against defendant, NuStar GP, LLC.[3] During the first round of litigation, plaintiff amended his complaint several times. After receiving the final order of the Workers' Compensation Board, plaintiff moved to amend his complaint a fourth time.

---

[3] Although defendant Shore Terminals, LLC appears in the caption of this case, only NuStar GP, LLC, is named as defendant in the negligence claims that are at issue on review. Our references to "defendant" throughout this opinion are therefore references to defendant NuStar GP, LLC.

Plaintiff's proposed fourth-amended complaint would have added three negligence-related claims that, in plaintiff's view, would fall within an exception to the immunity ordinarily afforded employers by ORS 656.018. Specifically, plaintiff's fourth-amended complaint would have expressly alleged that the board's determination—that he had failed to establish that his work-related incident was the major contributing cause of his injuries—brought his negligence claims against defendant within the scope of ORS 656.019. That statute provides, in part:

"An injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final. The injured worker may appeal the compensability of the claim as provided in ORS 656.298, but may not pursue a civil negligence claim against the employer until the order affirming the denial has become final."

ORS 656.019(1)(a).

Defendant objected to the filing of plaintiff's fourth-amended complaint, arguing that ORS 656.019 did not apply, because, although the board had determined that certain of plaintiff's medical conditions were not compensable, his workers' compensation claim as a whole had been accepted. After responding to that argument, plaintiff added that, if ORS 656.019 did not entitle him to pursue damages for medical conditions deemed noncompensable on major-contributing-cause grounds, then the workers' compensation scheme violated Article I, section 10, of the Oregon Constitution by effectively denying him a remedy. Defendant responded to plaintiff's remedy-clause argument much as it had to his statutory argument, asserting that he had not, in fact, been denied a remedy, because the board's decision had not denied him recovery as to his entire claim, but only as to certain conditions.

The trial court agreed with defendant on both points and denied plaintiff's request to amend his complaint. Plaintiff appealed. The Court of Appeals affirmed the trial

court's ruling on both grounds. *Bundy v. NuStar GP, LLC*, 277 Or App 785, 806, 808, 373 P3d 1141 (2016) (*Bundy I*).

Plaintiff petitioned this court for review, presenting only his statutory argument that ORS 656.019 provided an exception to ORS 656.018's exclusive-remedy provision. *Bundy II*, 362 Or at 284. We accepted review to determine the scope of ORS 656.019. In our resulting decision, we determined that ORS 656.019 encompassed claims, like plaintiff's, that had been accepted in part and denied in part. *Id.* at 297 (holding that "the legislature used the terms 'work-related injury' and 'the claim' in the expansive sense that encompasses claims—like plaintiff's—for a condition that is denied on major-contributing-cause grounds after an initial claim acceptance has been issued").

At the conclusion of our decision in *Bundy II*, we briefly addressed an argument that defendant had raised for the first time in its briefing to this court. In its respondent's brief, defendant had questioned the assumption that the phrase "may pursue" in ORS 656.019 expressed a grant of authority to pursue civil negligence actions that fell within the scope of that provision, as opposed to merely establishing procedural requirements for such claims if they were otherwise available. We observed that both parties had offered "plausible" textual interpretations of ORS 656.019. *Id.* at 297-98. But we expressly reserved "the comprehensive statutory analysis needed to resolve whether the legislature intended ORS 656.019 to function as a substantive exception to the exclusive remedy provision." *Id.* at 298. Our holding did not preclude the parties from arguing that issue on remand. *Id.* at 299.

On remand, plaintiff filed his fourth-amended complaint, again asserting both statutory and constitutional grounds for his argument that he was entitled to pursue a negligence claim notwithstanding ORS 656.018. Defendant moved to dismiss that complaint, arguing, as it had in this court, that ORS 656.019 did not itself provide a "substantive exception" to ORS 656.018. Defendant additionally argued that plaintiff's constitutional argument had been rejected by the Court of Appeals in *Bundy I* and that plaintiff had not challenged that holding on review in this court, rendering

that aspect of the Court of Appeals' decision binding law of the case.

The trial court again agreed with both of defendant's arguments, concluding that the legislature had not intended for ORS 656.019 to serve as a substantive exception to the exclusive-remedy provision, ORS 656.018, and that plaintiff's constitutional argument was barred on law-of-the-case grounds. That court therefore granted defendant's motion to dismiss plaintiff's fourth-amended complaint and entered judgment for defendant.

Plaintiff again appealed. Plaintiff assigned error to the trial court's dismissal of the complaint, but he challenged only the trial court's ruling that ORS 656.019 did not provide a substantive exception to ORS 658.018. Following an extensive examination of ORS 659.019's text, context, and legislative history, the Court of Appeals held that statute to be solely procedural—that is, not a substantive exception to ORS 656.018. *Bundy III*, 317 Or App at 200-06 ("[W]e agree with the trial court that ORS 656.019(1)(a) has all the hallmarks of a procedural statute that governs the time for bringing a negligence action; it is not a substantive exception to the immunity provided in ORS 656.018.").

Plaintiff again petitioned for review, reprising the statutory argument that he had made in the Court of Appeals and the trial court, but not the remedy clause argument that those courts had rejected on various grounds. We subsequently accepted review to consider whether ORS 656.019 provides a substantive exception to ORS 656.018's exclusive-remedy provision.

Thus, the current posture of this case can be summarized as follows: At various stages of this litigation plaintiff has advanced two distinct arguments that, in his view, support the conclusion that he is entitled to pursue his civil negligence claims despite the exclusive-remedy provision of the Workers' Compensation Law. His statutory argument—that ORS 656.019 provides a substantive exception to ORS 656.018—is squarely before this court. Significantly, however, plaintiff has effectively abandoned his second argument: that the remedy clause entitled him to bring those

claims. First, on remand, the trial court ruled that the law of the case doctrine barred plaintiff's constitutional argument, and plaintiff did not assign error to that ruling on appeal. Second, and more simply, although plaintiff argues that we must construe the Workers' Compensation Law to avoid constitutional concerns, he has not challenged—either in the Court of Appeals or on review—the trial court's rejection of his argument that he is constitutionally entitled to a remedy.[4]

Plaintiff's omission of that constitutional argument is noteworthy because an analysis of that issue would require us to fully grapple with the implications of our holding in *Horton*, 359 Or 168, which overruled the reasoning in *Smothers*, 332 Or 83, but left the underlying holding intact. *See Bundy II*, 362 Or at 289 n 10 (noting that "*Horton* overruled the construction of the remedy clause on which *Smothers* relied" but "did not specifically overrule *Smothers*'s ultimate holding that injured workers who 'receive no compensation benefits' have a constitutional right to pursue a civil action for their injury" (internal citations omitted)). Rather than undertaking that inquiry, our task here is to decide the only issue presented for this court's review, which, as noted, is whether ORS 656.019, standing alone, serves as a substantive exception to the exclusive remedy provision, ORS 656.018. We turn to that question.

B.   *Historical Background Surrounding the Enactment of ORS 656.019*

Resolving the question of legislative intent underlying this case requires us to apply our familiar statutory-construction framework, in which we examine the relevant text in context, together with any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). However, because of the unique historical circumstances surrounding the enactment of ORS 656.019 and the interplay between those events and our remedy-clause case law, we provide context for our analysis by first outlining the history of ORS 656.019 before taking a closer look at the statutory text.

---

[4] We address plaintiff's argument regarding the constitutional "avoidance canon" below. 371 Or at 245.

1.   *The Workers' Compensation Law generally*

In 1913, the Oregon legislature adopted the "Workmen's Compensation Act." *See Salem Hospital v. Olcott*, 67 Or 448, 449-50, 136 P 341 (1913) (explaining adoption of Workmen's Compensation Act). Later, this court observed that the purpose of the workers' compensation statutes was twofold: to afford workers protection in the form of compensation for work-related injuries while at the same time protecting employers from costly litigation. *See Bigby v. Pelican Bay Lbr. Co.*, 173 Or 682, 692, 147 P2d 199 (1944). To further those goals, the workers' compensation system effectuates a *quid pro quo*, with injured workers giving up the right to pursue civil negligence actions against their employers and those employers assuming liability for work-related injuries without regard to fault. *See Errand v. Cascade Steel Rolling Mills, Inc.*, 126 Or App 450, 453-54, 869 P2d 358 (1994), *rev'd on other grounds*, 320 Or 509, 888 P2d 544 (1995) (describing the *quid pro quo* underlying workers' compensation system).

In Oregon's first workers' compensation statute, the provision relating to the surrender of civil claims by injured workers specified that benefits received for work-related injuries under the statute were "in lieu of" other claims against the employer. Or Laws 1913, ch 112, § 12. That provision is the predecessor to—and original version of—the exclusive-remedy provision now codified as ORS 656.018.

Notably, however, under the workers' compensation system as originally enacted, participation was "not compulsory"; an employer was "free to accept the provisions of the act or to reject them" as the employer saw fit, and employees chose at the time of employment "whether or not [to] come under the terms of the act." *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 517, 518, 154 P 106 (1915) (describing Or Laws 1913, ch 112, §§ 10-12). In other words, section 12, as enacted, could not accurately be described as an exclusive-remedy provision, because both parties to the workers' compensation system were free to opt into or out of the system.

2.   *Workers' compensation as an exclusive remedy*

In subsequent years, the Workers' Compensation Law was subject to several legislative changes. When that

law was recodified in 1965, the legislature removed the voluntary nature of the system and, subject to specific exclusions, required all employers having at least one employee and their workers to comply with the system. Or Laws 1965, ch 285, §§ 8-9. Through that recodification, what had been Oregon Laws, chapter 112, section 12, became ORS 656.018 and stipulated that, except as specifically provided otherwise, a complying employer "is relieved of all other liability for *compensable* injuries." ORS 656.018(1) (1965) (emphasis added). Over the next 35 years, the legislature continued to make minor changes to ORS 656.018, as described in our earlier decision in this case:

> "In 1995, * * * the legislature amended ORS 656.018 to provide that the exclusive remedy provision would apply to all work-related injuries 'whether or not they are determined to be compensable under this chapter.' Or Laws 1995, ch 332, § 5. That expansion of the exclusive remedy provision created a category of injury for which the workers' compensation laws barred a civil negligence action but did not provide compensation benefits in exchange.
>
> "Initially, the legislature made the expansion of the exclusive remedy provision temporary, providing in the same 1995 law that the new language would be deleted from ORS 656.018 on December 31, 2000 (metaphorically, a 'sunset' of the expanded exclusive remedy). Or Laws 1995, ch 332, §§ 5a, 66. The legislature later postponed that sunset date in 1999 as part of a compromise package of amendments to the workers' compensation laws. Or Laws 1999, ch 6, §§ 1, 4, 5."

*Bundy II*, 362 Or at 288 (footnote omitted). Thus, as amended in 1995, the exclusive-remedy provision set out in ORS 656.018 no longer purported to limit liability only as to workplace injuries deemed "compensable" under the Workers' Compensation Law.

### 3. Smothers

After that more expansive exclusive-remedy provision had gone into effect, at least one worker challenged its constitutionality in court. That worker, whose case would later come before this court in *Smothers*, 332 Or 83, had

brought a negligence action for injuries he had suffered at work. Those injuries had been determined to be noncompensable under the Workers' Compensation Law on the ground that the worker "could not prove that the work exposure was the major contributing cause of his injuries." *Id.* at 135. The trial court had granted the defendant's motion to dismiss the action based on the exclusive-remedy provision of the Workers' Compensation Law, and, on review in this court, the worker argued that he had been denied a remedy for the injuries suffered at work, in violation of the remedy clause in Article I, section 10, of the Oregon Constitution. *Id.* at 86.

4. *Senate Bill 485 (2001)*

While *Smothers* was working its way through the courts, the state legislature continued its efforts to improve various aspects of the workers' compensation system:

"In January 2001, Senate Bill (SB) 485—a wide-reaching bill providing for numerous changes to Oregon's workers' compensation system—was introduced as a result of collaboration between a group of 'stakeholders' to the workers' compensation system appointed by the Governor, the Management-Labor Advisory Committee, and the Senate Committee on Business, Labor and Economic Development. Testimony, House Committee on Business, Labor and Consumer Affairs, SB 485, May 15, 2001, Ex L (statement of Workers' Compensation Division Administrator John Shilts)."

*Alcutt v. Adams Family Food Services, Inc.*, 258 Or App 767, 777, 311 P3d 959 (2013), *rev den*, 355 Or 142 (2014). SB 485 (2001) passed from the State Senate to the House of Representatives in March 2001. At the time, the bill did not include section 15, which would later become ORS 656.019. Or Laws 2001, ch 865, § 15.

Five days before the House took up SB 485, this court announced its decision in *Smothers*, 332 Or 83. The court, after conducting an extensive review of the historical underpinnings of Article I, section 10, agreed with the plaintiff, holding that applying the exclusive-remedy provision in ORS 656.018 to bar his negligence claim would

unconstitutionally deny him the right to a remedy guaranteed by Article I, section 10, of the Oregon Constitution. *Id.* at 135-36. In effect, the court held that an exception to the exclusive-remedy provision in ORS 656.018 was constitutionally required.

The *Smothers* decision represented a sea change in our remedy-clause jurisprudence. *See id.* at 115-24 (discussing the court's prior decisions interpreting Article I, section 10, before announcing new framework). The *Smothers* court described a new analytical approach to analyzing claims under that clause. Under that analysis, a court would first determine whether a cause of action for the alleged injury was cognizable under the common law of Oregon when the Oregon Constitution was adopted in 1857. *Id.* at 124. If the cause of action had existed at that time—and if the legislature had subsequently abolished that common-law cause of action, thereby abrogating rights presumably entitled to protection under the remedy clause—then the next question for the court would be whether the legislature had provided a constitutionally adequate substitute for the common-law cause of action. *Id.* Applying that framework to the case before it, the court concluded that the plaintiff had the right to pursue his negligence claim notwithstanding ORS 656.018 (1995). *Id.* at 136.

5.   *The legislature's response to* Smothers

In the House of Representatives, where SB 485 remained under consideration, the *Smothers* decision created immediate turmoil amongst legislators and interested parties. Because *Smothers* had held that a worker was constitutionally entitled to bring a separate civil negligence action for certain claims, the various groups that had been involved in drafting SB 485 were concerned that that decision had upset the delicate balance of interests between employers and workers, which the compromises reflected in SB 485 had rested upon. We describe that reaction to *Smothers* and the resulting changes to SB 485 in further detail below; for now it should suffice to say that the legislators and interested parties quickly began "fixing" the issue that *Smothers* had created, changing existing sections of SB

485 and, in direct response to *Smothers*, adding a new section, section 15, now codified at ORS 656.019.[5] The 2001 legislature then approved SB 485 as amended. Minutes, House Rules, Redistricting and Public Affairs Committee, June 18, 2001, 5; Tape Recording, Third Reading to the House, SB 485, July 4, 2001, Tape 234, Side B; Tape Recording, Senate Floor Proceedings, SB 485, July 5, 2001, Tape 277, Side A (Senate concurred in House amendments and repassed bill.).

### 6.  *Our inquiry*

The historical context surrounding the enactment of ORS 656.019 helps frame our inquiry in this case. We must determine whether the legislature's purpose in enacting ORS 656.019 was to codify the judicially recognized exception to the exclusive-remedy provision of the Workers' Compensation Law or, instead, to provide a procedural exhaustion requirement for claims that fit the *Smothers* exception and were therefore constitutionally entitled to proceed.

## II.  ANALYSIS

With our inquiry thus framed, we turn to the comprehensive statutory analysis that we expressly reserved in our previous decision. As noted, that requires us to examine the relevant text in context, together with any helpful legislative history. *State v. Gaines*, 346 Or at 171-72. "If, after consideration of text, context, and legislative history, the intent of the legislature remains unclear, then the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612, 859 P2d 1143 (1993). In conducting our analysis, we address the parties' various arguments at the relevant steps of that analysis.

### A.  *Text*

We begin with the text. For purposes of our inquiry, the relevant text is that found in the first sentence of ORS 656.019(1)(a), which reads in full:

_____

[5] Neither party disputes that ORS 656.019 was enacted in response to *Smothers*. The parties disagree, however, as to what exactly the legislature intended to accomplish in enacting the statute.

"An injured worker may pursue a civil negligence action for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury only after an order determining that the claim is not compensable has become final."

As a threshold matter, we note that the legislature's chosen words—specifically the phrase, "for a work-related injury that has been determined to be not compensable because the worker has failed to establish that a work-related incident was the major contributing cause of the worker's injury"—mirror *Smothers*'s holding. 332 Or at 135 ("[I]f a workers' compensation claim *** is denied because the worker has failed to prove that the work-related incident was the major *** contributing[] cause of the injury, then the exclusive remedy provisions of ORS 656.018 are unconstitutional."). That choice of words reinforces the notion that the legislature was specifically addressing the type of negligence claims that, under *Smothers*, were constitutionally exempt from the exclusive-remedy provision.

In arguing their respective views regarding the legislature's intent in enacting ORS 656.019, the parties highlight differing portions of the first sentence of ORS 656.019 (1)(a). Plaintiff emphasizes the phrase "may pursue," arguing that it expresses a grant of authority to pursue actions that fall within the scope of the statutory language—that is, negligence actions for work-related injuries that are deemed noncompensable because the work-related incident has not been shown to be the major contributing cause of the injury. Defendant, in turn, focuses on the phrase, "*only after* an order determining that the claim is not compensable *has become final*." (Emphases added.) In defendant's view, that language indicates that what the legislature intended to do was impose procedural requirements for workers seeking to pursue "*Smothers* claims," *i.e.*, claims that the Workers' Compensation Law does *not* authorize, but that *Smothers* held workers were nonetheless entitled to pursue. And, as we observed in our previous decision, each party's textual reading of ORS 656.019(1)(a) is plausible. *See Bundy II*, 362 Or at 297-98 (describing plaintiff's construction of the statute as "consistent with the ordinary meaning of the term 'may' as

'have permission to[,]'" while recognizing that defendant's "interpretation of the phrase is also plausible"). Nothing that either party has argued in this round of appeal causes us to question that conclusion. Thus, with that preliminary understanding in mind, we now turn to the statutory context for further guidance regarding the statute's intended meaning.

B.   *Context*

The context of a statute "includes other provisions of the same statute and other related statutes." *PGE*, 317 Or at 611. Defendant argues that the second sentence of ORS 656.019(1)(a) confirms that the limitations set forth in the statute concern *when* a negligence claim may be brought, and not *whether* such a claim can be brought in the first instance. The second sentence of ORS 656.019(1)(a) provides:

> "The injured worker may appeal the compensability of the claim as provided in ORS 656.298, but may not pursue a civil negligence claim against the employer until the order affirming the denial has become final."

Defendant argues that the phrase "may not pursue" and the word "until" in that sentence, when read together with the phrases "may pursue" and "only after" in the first sentence of the paragraph, indicate that the legislature was simply describing timing restrictions for the types of claims recognized by *Smothers*. Consistent with that argument, the Court of Appeals reasoned that the two sentences, read in conjunction, "reinforce[d] the view that the words 'may pursue *** only after' and 'may not pursue *** until' are alternative ways of describing a timing restriction." *Bundy III*, 317 Or App at 202 (ellipses in original).

Plaintiff argues that the mere inclusion of an exhaustion requirement for workers pursuing negligence claims does not alter the plain meaning of ORS 656.019. And, to some extent, we agree. That is, if the plain text of that provision were to be unambiguous, then nothing about the inclusion of an exhaustion requirement would necessarily lead us to conclude that ORS 656.019(1)(a) did not also provide a substantive exception to ORS 656.018. But the plain text of ORS 656.019 is not unambiguous. As we have

already acknowledged, defendant's reading of the plain text as *only* establishing a timing requirement is plausible; thus, defendant has not argued that we should disregard that plain text. And, although it is not dispositive, we agree with the Court of Appeals' reasoning that the parallel wording of the two sentences of ORS 656.019(1)(a) lends some support to the notion that ORS 656.019 is intended to govern the timing of civil negligence claims, and not to create its own exception to the exclusive-remedy provisions of ORS 656.018.

As further support for that understanding of ORS 656.019(1)(a), defendant points to the next paragraph of the same subsection, arguing that ORS 656.019(1)(b) dispels any doubt that the legislature intended for ORS 656.019 (1)(a) to establish procedural rules and not create substantive rights. ORS 656.019(1)(b) provides:

> "Nothing in this subsection grants a right for a person to pursue a civil negligence action that does not otherwise exist in law."

In defendant's view, that disclaimer clarifies that the legislature did not intend for ORS 656.019(1)(a) to authorize a claim for negligence without an independent source of legal authority, namely, the remedy clause as construed in *Smothers*. Plaintiff and *amicus* Oregon Trial Lawyers' Association (OTLA) provide a nuanced response. In their view, ORS 656.019(1)(a) does not "grant" any rights; rather it "restores" a common-law right to bring a civil negligence claim that is "granted" by the remedy clause. Thus, they argue that recognizing the right to bring a civil negligence action for work-related injuries under ORS 656.019(1)(a) does not conflict with ORS 656.019(1)(b). Plaintiff's argument rests on his understanding of the holding in *Smothers*. According to plaintiff, that holding, which first identified whether a cause of action existed in the Oregon common law in 1857, recognized the common-law right to bring civil negligence claims for work-place injuries. Plaintiff therefore argues that his construction of ORS 656.019(1)(a)—as providing a substantive exception to ORS 656.018—is consistent with ORS 656.019(1)(b) because ORS 656.019(1)(a)

"restores" a right that "otherwise exists in law," namely the Oregon common law.

Plaintiff's understanding—that ORS 656.019 cleared the way for workers to pursue "*Smothers* claims," the right to which was "grant[ed]" by other sources of law, not ORS 656.019—may be plausible, but it at most explains why ORS 656.019(1)(b) does not necessarily foreclose his construction of ORS 656.019(1)(a). It does not advance his argument that the legislature intended to create its own exception to the exclusive-remedy provision. And in our view, the better understanding of ORS 656.019(1)(b) is that it was intended to clarify that ORS 656.019(1)(a) does not grant a right to bring a civil negligence action beyond any that *Smothers* might constitutionally require. That is, given the historical context in which ORS 656.019 was enacted, the legislature's reference to a "right that does not otherwise exist in law" appears to allude to the right addressed in *Smothers*. And because the "right" at issue there was the "right" of injured workers whose workers' compensation claims were denied on major-contributing-cause grounds to bring civil negligence suits, the legislature appears to have been acknowledging what *Smothers* required, while "grant[ing]" nothing more.

That view is supported by a separate contextual clue not noted by either party. *See Dept. of Human Services v. J. R. F.*, 351 Or 570, 579, 273 P3d 87 (2012) (addressing court's "obligation to interpret the statutes correctly, which includes an obligation to consider relevant context, regardless of whether it was cited by any party"). In considering a statute's context, we examine all the law contained in the session laws, including parts of session laws not codified into the Oregon Revised Statutes. *See Owens v. Maass*, 323 Or 430, 434 n 5, 918 P2d 808 (1996) (examining uncodified section of session laws as part of contextual analysis).

When the legislature enacted the foregoing changes to the Workers' Compensation Law, Oregon Laws 2001, chapter 865, section 15, was codified as ORS 656.019. Two subsections, (a) and (b), accompanied section 15 and were passed into law by the legislature but not codified into the Oregon Revised Statutes. Subsection 15a, in particular,

offers additional insight into the purposes of ORS 656.019. That subsection reads, in full:

> "To assist the Legislative Assembly in developing a constitutionally adequate system of exclusive remedies for workplace injuries, the Workers' Compensation Management-Labor Advisory Committee [MLAC] shall recommend to the Seventy-second Legislative Assembly an exclusive, no-fault, expeditious alternative remedy to civil litigation for injured workers who have established that their injuries were work-related but whose claims have been denied because the workers have failed to establish that work-related incidents were the major contributing cause of their injuries."

Or Laws 2001, ch 865, § 15a.

It is telling that the 2001 Legislative Assembly directed MLAC to present for the very next legislature's consideration an exclusive, alternative remedy for injured workers whose claims were denied on major-contributing-cause grounds. That directive lends further support for defendant's understanding of ORS 656.019, because it strongly suggests that the legislature envisioned a future in which workers like the plaintiff in *Smothers* would have a remedy within the workers' compensation system. Because section 15a indicates that the legislature anticipated developing a remedy within the Workers' Compensation Law to replace that required by *Smothers*, it is doubtful that the legislature also intended to affirmatively authorize a judicial remedy by creating a substantive exception to ORS 656.018.

C.   *Legislative History*

We return to ORS 656.019's legislative history. Defendant considers the statements of various witnesses and legislators regarding SB 485—especially those describing the new law as creating a process for pursuing *Smothers* claims—to be essentially dispositive. Plaintiff responds that the relevant legislative history is far less helpful than defendant suggests. For support, plaintiff points to our previous opinion, in which we first observed that "the legislative history reveals an intention to capture and limit the kind of civil actions that the legislature believed *Smothers* would allow," but then ultimately concluded that the legislature

may have intended that ORS 656.019 apply to a broader category of claims than *Smothers* contemplated. *Bundy II*, 362 Or at 295-96.

Plaintiff is correct in observing that we previously reviewed the legislative history of ORS 656.019, but our focus at the time was on an issue other than the one now before us. When reviewed in light of the question presented at this stage of the litigation, the legislative history proves to be less ambiguous and, ultimately, highly indicative that the legislature intended to create a process by which claims protected under *Smothers* could be judicially pursued, and not a right to pursue such claims whether or not the constitution guaranteed such a right.

As discussed above, the provision that became ORS 656.019 was added to an existing package of amendments to the Workers' Compensation Law after we issued our decision in *Smothers*. Thus, our review of the legislative history focuses on what occurred in the legislature following our announcement of that decision.

When we issued *Smothers*, SB 485 (by then SB 485A) was under consideration by the House Committee on Business, Labor, and Consumer Affairs. Discussion of the bill immediately turned to the impact of *Smothers*. Witnesses disagreed as to that impact. Some described the *Smothers* decision as "narrow," only rendering a small portion of the workers' compensation scheme unconstitutional. Tape Recording, House Committee on Business, Labor, and Consumer Affairs, SB 485A, May 15, 2001, Tape 115, Side A (statement of Jim Egan, representative of OTLA). Others took a broader view. For example, although we expressly stated in *Smothers* that "the constitutionality of the overall workers' compensation statutory program is not in question," 332 Or at 125, at least one witness believed that our decision in that case could cast doubt on the constitutionality of the entire concept of the exclusive remedy in the workers' compensation chapter. Tape Recording, House Committee on Business, Labor, and Consumer Affairs, SB 485A, May 15, 2001, Tape 115, Side A (statement of attorney Kevin Mannix). As a potential means of avoiding such consequences, the same witness suggested a constitutional

referral that would enshrine the constitutionality of the exclusive-remedy provision in the Oregon Constitution. *Id.* Addressing the *Smothers* case on more narrow grounds, a legislator questioned whether the legislature should remove the "major contributing cause language" from the workers' compensation chapter, thereby removing the gap that *Smothers* addressed. Tape Recording, House Committee on Business, Labor, and Consumer Affairs, SB 485A, May 15, 2001, Tape 114, Side B (statement of Rep Randy Leonard).

Debate continued at the May 17, 2001, hearing of the House Committee on Business, Labor, and Consumer Affairs. Chris Davie of SAIF Corporation testified. After discussing the possibility of a constitutional amendment or a change to the major-contributing-cause standard, Davie offered a measured response, opining that perhaps the legislature should wait until it had seen the full impact of the *Smothers* decision on the workers' compensation system. Tape Recording, House Committee on Business, Labor, and Consumer Affairs, SB 485A, May 17, 2001, Tape 117, Side A (statement of Chris Davie). Meanwhile, he offered one suggestion:

> "There is one suggestion that I would make, though, and that is that the Supreme Court didn't clearly *spell out the procedure* for a worker who wants to pursue this kind of lawsuit. And we think it would be helpful if the legislature could do that. \*\*\* [T]he court did talk about a two-step process. First, the worker files a claim. *The claim is then denied, and at that point the worker can pursue some legal action against the employer if they choose to do so.* The court didn't exactly say that that's what you have to do. And to try and resolve some of these procedural questions that might come up, it might be useful for the legislature to just clarify that in the law, so that as we go forward everyone *will know the road map* for getting through this new system."

*Id.* (emphases added). At the conclusion of the hearing, the committee passed SB 485A to the House Committee on Rules, Redistricting and Public Affairs.

At the June 18, 2001, hearing of the House Committee on Rules, Redistricting, and Public Affairs, the committee took up an amended version of SB 485A that included the provision that is now ORS 656.019, section 15. John

Shilts, the Workers' Compensation Division Administrator, testified that those amendments were produced by the group of "stakeholders" in the workers' compensation system appointed by the Governor. *See* Testimony, House Committee on Rules, Redistricting, and Public Affairs, SB 485A, June 15, 2001, Ex D (noting that "[t]he SB 485 group met again recently to determine an appropriate response to the *Smothers* decision. Their recommendations are found in the -A11 amendments in front of you.").

Because the SB 485 group was charged with proposing the amendments that would lead to the final version of SB 485A, that group's explanation of the purpose of those amendments is particularly significant. One member of the group, Tim Nesbitt, testified at the June 15 hearing and gave the following testimony regarding section 15:

> "Despite our differences, we were asked to reconvene as a labor-management work group and attempt to respond to, if not 'fix,' the situation created by the *Smothers* decision. And, after five meetings and much discussion, we have come to an agreement on the following three courses of action.
>
> "We have clarified *how* and *when* workers must exhaust their attempt to seek a remedy through the workers comp system * * *;
>
> "We have recommended that DCBS gather information on the incidence and outcome of *Smothers* cases, so that we can better assess their frequency and cost * * * and;
>
> "We have agreed that MLAC should develop 'an exclusive, no-fault, expeditious alternative process and remedy' for *Smothers*-type claimants as an alternative to the court system and recommend such an alternative to the next legislature."

Testimony, House Committee on Rules, Redistricting, and Public Affairs, SB 485A, June 15, 2001, Ex E (statement of Oregon AFL-CIO President Tim Nesbitt) (emphases added). Nesbitt's three comments quoted above relate to SB 485A sections 15, 15b, and 15a, respectively. At least two aspects of those comments are noteworthy. First, the witness's use of the words "respond" and "fix" in reference to the *Smothers* decision—terminology used repeatedly by witnesses and

legislators discussing that decision—provides some indication that *Smothers* was viewed as an obstacle whose effects needed to be undone, or at least overcome. Given that sentiment, it is unlikely that the legislature or the proponents of the -A11 amendments were interested in etching the requirements of *Smothers* in stone.[6] Second, and to similar effect, Nesbitt's explanation that section 15 clarified *how* and *when* workers could bring the civil negligence claims contemplated by *Smothers* indicates that the purpose of section 15 was to establish a process for injured workers to bring *Smothers* claims, and not to codify a substantive exception.

On the House floor, prior to the vote, Representative Carl Wilson described SB 485A, explaining that,

> "the bill clarifies the process the injured workers must follow to exhaust their workers' compensation remedy, shielding all parties from the extra cost of having to pursue both the workers' compensation claim and court case at the same time."

Tape Recording, House Floor Proceedings, SB 485A, July 4, 2001, Tape 234, Side B (statement of Rep Carl Wilson). SB 485A passed to the Senate. Before the Senate voted on the bill, Senator Roger Beyer noted:

> "This bill *** says that a person has to go through the workers' compensation system prior to entering the court system in a work—case of a workplace injury. They have to go through the workers' compensation system first before they can do that."

Tape Recording, Senate Floor Proceedings, SB 485A, July 5, 2001, Tape 277, Side A (statement of Sen Roger Beyer).

The foregoing legislative history supports several conclusions. The proponents and legislators involved with drafting the amendments that would become ORS 656.019 were deeply concerned with the impact that *Smothers* would

---

[6] Indeed, Nesbitt's statement that the amendments were an "attempt to respond to, if not 'fix,' the situation created by the *Smothers* decision[,]" suggests that he, at least, viewed section 15 as a means of accommodating claims protected by *Smothers* until an adequate substitute remedy could be enacted, and not as a means of making *Smothers* claims a substantive component of the Workers' Compensation Law.

have on the entire workers' compensation system. They were offered various solutions designed to address the problem that they felt *Smothers* had created. As noted, the legislative history is replete with comments by witnesses and legislators seeking to "fix" *Smothers*. Given that almost unanimously negative response to *Smothers*, it is unlikely that the legislature would immediately seek to codify the exception that *Smothers* mandated. Rather, it is far more likely that those involved in passing the amendments to SB 485 sought to accommodate what *Smothers* required—a pathway for injured workers to pursue relief for claims denied on major-contributing-cause grounds—while leaving for another day (perhaps as soon as the next legislative session) the issue of a long-term "fix" for *Smothers*: the development of an exclusive, alternative path within the existing system for injured workers to pursue those claims.

D.   *Final Considerations*

Plaintiff and OTLA make two additional arguments in support of their interpretation of ORS 656.019, neither of which we find persuasive. First, they rely on ORS 174.010 and its dictate that, "[i]n the construction of a statute, * * * where there are several provisions or particulars[,] such construction is, if possible, to be adopted as will give effect to all." Both plaintiff and OTLA argue that the practical consequence of construing ORS 656.019 as a solely procedural statute is that such a construction would render the statute meaningless, contrary to ORS 174.010's mandate that we construe it, "if possible," so as to "give effect to all" its provisions. As we understand their reasoning, they argue that, unless ORS 656.019 establishes a substantive exception to ORS 656.018—that is, unless it affirmatively provides a right of action—ORS 656.019 merely expresses procedural requirements for a civil action that, at least post-*Horton*, does not exist.

We disagree with that argument for two reasons. For one thing, we question its premise that the cause of action required by *Smothers* no longer exists. True, in *Horton*, this court overruled the remedy-clause analysis announced in *Smothers*. 359 Or at 218-19 (expressly overruling *Smothers* and noting that "*Smothers* clearly erred in

holding that the remedy clause locks courts and the legislature into a static conception of the common law as it existed in 1857"). However, the facts of *Horton* did not implicate the workers' compensation system and, as we noted in our previous decision, although "*Horton* overruled the construction of the remedy clause on which *Smothers* relied[,]" that decision "did not specifically overrule *Smothers*' ultimate holding that injured workers who receive no compensation benefits have a constitutional right to pursue a civil action for their injury." *Bundy II*, 362 Or at 289 n 10 (internal quotation marks and citation omitted). Thus, an injured worker whose workers' compensation claim has been denied on major-contributing-cause grounds may still argue that Article I, section 10, entitles the worker to pursue a civil negligence action notwithstanding ORS 656.018. And if that argument were to succeed, the worker's civil claim would be subject to ORS 656.019's procedural requirements, just as the enacting legislature intended.[7]

For another thing, even if subsequent events *had* effectively rendered ORS 656.019 moot, that would not implicate the cited provision of ORS 174.010. As we have repeatedly emphasized, our paramount goal in construing statutes is to determine the intent of the legislature that enacted them. By instructing us to give effect, "if possible," to all provisions of a statute, ORS 174.010, the legislature has provided us with a tool for assessing that intent; that is, the legislature has told us that it would not intend to enact a meaningless provision. But as with all statutes, the most relevant time for purposes of determining the intended effect of ORS 656.019 is the time of its enactment. *See Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (explaining that, when discerning the legislature's intent, the court "focuses on what the legislature intended at the time of enactment and

---

[7] As previously noted, plaintiff does not argue at this stage of the litigation that, if ORS 656.019 does not provide an exception to ORS 656.018, then the exclusive-remedy provision must, under *Smothers*, give way to his right to pursue a negligence claim. We therefore do not consider that argument. We note, however, that the facts of this case are different from those that led to the holding in *Smothers*; moreover, although we observed in *Bundy II* that we had not overruled *Smothers*'s specific holding in *Horton*, it bears also mentioning that we also had no occasion in *Horton* to consider that specific holding. Whether the application of *Horton*'s remedy-clause analysis would lead to a different outcome in *Smothers* is an issue we leave for another day.

discounts later events"). And, as discussed above, the legislature believed at the time of ORS 656.019's enactment that claims denied on major-contributing-cause grounds had to be allowed, despite the exclusive-remedy provision in ORS 656.018. Thus, whether or not the provisions of ORS 656.019 all have continuing effect, there is no dispute that they were effective when ORS 656.019 was enacted. Nothing in ORS 174.010 requires more than that.

Plaintiff and OTLA's second and last remaining argument is that the "avoidance canon"—under which courts seek to avoid interpreting statutes in ways that would render them unconstitutional—requires that we construe ORS 656.019 as providing a substantive exception to ORS 656.018. They argue that defendant's proposed construction of ORS 656.019 would deny plaintiff the remedy for his injuries that Article I, section 10, guarantees. Thus, they argue, that construction would render the exclusive-remedy provision, and specifically ORS 656.018(7), unconstitutional as applied.

The problem with that argument is that, under our approach to statutory construction, we do not resort to general maxims of statutory interpretation if a statute appears unambiguous following an examination of the statute's text, context, and legislative history. *See, e.g.*, *Chaimov v. Dept. of Admin. Services*, 370 Or 382, 398 n 7, 520 P3d 406 (2022) (so observing). And, in our view, our foregoing review of the text, context, and legislative history of ORS 656.019 removes any uncertainty regarding that statute's intended meaning. That is, we have no remaining doubt whether the legislature intended to create its own substantive exception to ORS 656.018 when it enacted ORS 656.019. As a result, there is no ambiguity, and consideration of the avoidance canon is not warranted.[8]

---

[8] Even if that were not the case, plaintiff and OTLA's reliance on the canon would seem to be misplaced. Their argument appears to be directed at the constitutionality of ORS 656.018, not ORS 656.019, the statute we are construing here. We are aware of no case in which the goal of preserving the constitutionality of one statute (here, ORS 656.018) has informed a court's construction of another statute (here, ORS 656.019). Finally, whether or not it would have been appropriate to apply the avoidance canon to resolve any ambiguity in ORS 656.019 that we might have found, it would not be appropriate for plaintiff to rely on that canon to revive constitutional arguments that he has chosen not to maintain.

## III.   CONCLUSION

After *Smothers*, the legislature understood that workers' compensation claimants who were denied benefits on major-contributing-cause grounds would be entitled to pursue recovery in civil negligence actions, and the legislature took steps to regulate that process, including by dictating when such actions were to be initiated. The legislature did not intend to codify an exception for such civil negligence actions; indeed, the legislature that enacted ORS 656.019 anticipated rendering such actions unnecessary—prohibited, even—as soon as the next legislative session. We therefore conclude that the legislature did not intend for ORS 656.019 to be a substantive exception to ORS 656.018's exclusive-remedy provision. Rather, it enacted ORS 656.019 as a procedural statute to regulate a process that, following *Smothers*, the legislature believed it would be required to accommodate until such time as it could provide claimants with an adequate, substitute remedy.

As discussed above, plaintiff has not contended on review that he is constitutionally entitled to an exception—and we therefore express no view on that question—but we conclude that plaintiff has not established the existence of a statutory exception under ORS 656.019. The trial court therefore did not err when it granted defendant's motion to dismiss plaintiff's complaint.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.