270 January 30, 2025 No. 6

IN THE SUPREME COURT OF THE
STATE OF OREGON

ARNOLD R. HUSKEY,
*Petitioner on Review,*

*v.*

OREGON DEPARTMENT OF CORRECTIONS,
Colette Peters, Guy Hall, Garrett Laney,
and John and Jane Doe(S) 1-10,
individually and in their official capacities,
*Respondents on Review.*

(CC 22CV21140) (CA A180196) (SC S070771)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 7, 2024.

Edward A. Piper, Angeli Law Group LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Robert M. Wilsey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Kelly Simon, ACLU Foundation of Oregon, Portland, filed the brief for *amicus curiae* American Civil Liberties Union and American Civil Liberties Union of Oregon.

JAMES, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Marion County Circuit Court, Erious Johnson, Judge. 329 Or App 397, 542 P3d 66 (2023).

**JAMES, J.**

In a civil action brought in the State of Oregon, where the plaintiff alleges economic damages in the form of future lost employment income, must the plaintiff plead an "enforceable right" to that future employment to survive a motion to dismiss for failure to state a claim brought under ORCP 21 A(1)(h)? The trial court and the Court of Appeals answered that question in the affirmative. *Huskey v. Dept. of Corrections*, 329 Or App 397, 542 P3d 66 (2023). We allowed review,[1] and hold the answer is no. Accordingly, we affirm in part, and reverse in part, the judgment of the trial court and the decision of the Court of Appeals.

## I.   FACTS

The facts as alleged are straightforward, and we accept them as true for purposes of our review. *See, e.g.*, *Bundy v. Nustar GP, LLC*, 371 Or 220, 224, 533 P3d 21 (2023). Plaintiff is an adult in custody (AIC) at an

---

[1] Before the Court of Appeals, plaintiff raised four assignments of error, only the first of which we take up here. The second assignment of error concerned the trial court's denial of plaintiff's motion to add an allegation of punitive damages. The Court of Appeals affirmed, and we affirm the Court of Appeals on that issue. The fourth assignment of error concerned whether the trial court had violated state and federal constitutional jury rights by dismissing plaintiff's complaint. The Court of Appeals affirmed the trial court without discussion, and we also affirm the Court of Appeals on that issue.

Plaintiff's third assignment of error challenged the trial court's dismissal of his declaratory judgment claim. Before the Court of Appeals, the department conceded that remand was required because "a declaratory judgment action cannot be dismissed under ORCP 21 A(1)(h)." *Huskey*, 329 Or App at 402. The Court of Appeals properly accepted that concession, but relied on its precedent in *Doe v. Medford School Dist. 549C*, 232 Or App 38, 221 P3d 787 (2009), for the proposition that,

"[w]hen the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim, *** our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits."

*Huskey*, 329 Or App at 402 (quoting *Doe*, 232 Or App at 46). Accordingly, the Court of Appeals vacated the judgment of dismissal and remanded for issuance of a judgment that "declares the rights of the parties, including our determination that plaintiff has no legally enforceable right to economic damages for lost income." *Id*. In light of that reasoning, when considered together with our reasoning and disposition relating to plaintiff's first assignment of error, we do not perceive a need to remand the third assignment of error to the Court of Appeals. Instead, we reverse the Court of Appeals on that assignment and remand this entire case back to the trial court.

Oregon correctional institution. Plaintiff sued the Oregon Department of Corrections and others (collectively, "the department") for breach of contract and civil rights violations, seeking, among other forms of relief, economic damages based on lost future wages and employment opportunities.

Years prior, plaintiff had sued the department, resulting in a settlement agreement in which the department purportedly orally agreed to not retaliate against him. That settlement agreement is the contract underlying this breach of contract action. In this case, plaintiff alleged that the department had breached its oral promise of nonretaliation by using negative video footage of plaintiff, without his permission, in department training videos. Plaintiff pleaded that, as a result of that negative portrayal, he suffered $11,640 in economic damages due to lost income under a theory that the department had denied him job assignments, training, and other income-generating opportunities.

The department moved to dismiss under ORCP 21 A(1)(h), arguing that the plaintiff "fail[ed] to allege facts showing that plaintiff suffered economic damages." According to the department, Article I, section 41(3), of the Oregon Constitution, which states that "no inmate has a legally enforceable right to a job or to otherwise participate in work, *** or to compensation for work or labor performed while an inmate," rendered plaintiff unable to plead economic damages, because he had no right to employment. The trial court agreed and dismissed plaintiff's complaint on those grounds.

The Court of Appeals agreed and affirmed, reasoning that, "[i]f an AIC has no legally enforceable right to work assignments or training opportunities, then it follows that an AIC may not sue for breach of contract for lost income associated with the loss of such opportunities." *Huskey*, 329 Or App at 400. We then allowed plaintiff's petition for review.

On review, the parties and *amici curiae* raise many complex constitutional arguments about the meaning of Article I, section 41(3) and its interplay with another constitutional provision, Article I, section 34(2) (prohibiting

involuntary servitude; adopted by the people in 2022). Although this court appreciates the excellent briefing provided by the parties and *amici* on those constitutional issues, we need not decide them, because, as we explain, this case presents a straight-forward question of pleading damages.

## II.   ANALYSIS

### A.   *Preservation*

We begin by addressing an issue of preservation, related to the damages question framed above. Throughout the litigation, the parties have focused heavily on issues of constitutional interpretation—understandably so, given the department's reliance on Article I, section 43. Our resolution today, which eschews the majority of those constitutional questions for a common-law damages analysis, admittedly tracks more closely to arguments raised by *amici*, rather than the parties themselves. At oral argument, the department questioned whether that subconstitutional argument was properly preserved.

We conclude that it was. Upon a trial court's grant of a party's motion to dismiss under ORCP 21, the issue on appeal is whether the trial court erred in granting dismissal—which typically concerns whether the arguments and sources of law adduced by the moving party, and relied upon by the trial court, legally required dismissal of the claim. When the issue on appeal is that the trial court erred in *denying* dismissal of a claim, the moving party must show that they preserved the error. In that context we look to our traditional preservation principles. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) ("We have previously drawn attention to the distinctions between raising an issue at trial, identifying a source for a claimed position, and making a particular argument. *** The first ordinarily is essential, the second less so, the third least." (Emphasis in original.)). However, when the issue on appeal is whether the trial court erred in *granting* dismissal of a claim, the nonmoving party generally can preserve that error with little beyond simply opposing dismissal

Here, plaintiff, who appeared *pro se* before the trial court, opposed dismissal. He consistently argued that he had

properly pleaded damages, and, further, he disputed that Article I, section 41(3)—relied upon by the moving party and the trial court—required the dismissal of his breach of contract claim. In his response to the motion to dismiss before the trial court, plaintiff wrote that, even if Article I, section 41(3), denied him a right to employment, "[the department] do[es] not dispute that [p]laintiff *** did in fact work." He then wrote:

> "Plaintiff has [pleaded] in his complaint, as well as submitted facts and evidence demonstrating indisputable proof of *earned monetary income* from his prison work assignment. Plaintiff has further [pleaded] allegations that [the department's] acts, actions intentionally breached the contract and caused [plaintiff] *loss of income and past and future impairment of earning capacity* sufficient to put the issue of fact before the jury."

(Emphases in original.)

Our resolution of this case, although based on subconstitutional arguments of *amici*, addresses that core issue—that is, whether Article I, section 41(3) required the dismissal of plaintiff's complaint. As we recently held in *State v. Skotland*, 372 Or 319, 329, 549 P3d 534, 539 (2024), preservation is a doctrine rooted in practicality that serves fairness and efficiency—affording both opposing parties and trial courts a meaningful opportunity to engage an argument on its merits. There, we noted that, "[s]ometimes, the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed on *this issue, for this reason*?" *Id*. (emphasis in original). Here, considering the issue and the arguments below, we do not perceive that the trial court would be surprised by our reasoning in reversing its decision today.

B.  *Merits*

Turning to the merits, generally, to state a claim for breach of contract, a plaintiff must, at a minimum, plead facts with sufficient particularity as to allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff. Alleging damages is an essential pleading requirement of a breach of contract

claim, and a plaintiff is required to plead a specific amount for damages for each claim of relief. ORCP 18 B.

A motion to dismiss under ORCP 21 A(1)(h) attacks the sufficiency of the complaint. When reviewing a complaint in that posture, we "accept as true all well-pleaded allegations of fact in the complaint and give plaintiff[] the benefit of all favorable inferences that may be drawn from the facts alleged." *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 528-29, 185 P3d 446 (2008). Whether the facts alleged are sufficient to state a claim for relief is a question of law. *See Rowlett v. Fagan*, 358 Or 639, 651, 369 P3d 1132 (2016) ("[T]he legal viability of any particular claim under Oregon law *** is strictly a matter of law.").

In this case, plaintiff alleged lost future income as well as impairment of his future employment opportunities. ORS 31.705(1)(a) defines economic damages as including, among other things, "objectively verifiable monetary losses including *** loss of income and past and future impairment of earning capacity ***." Accordingly, by the clear statutory definition, plaintiff pleaded economic damages, and he did so in a specific amount—$11,640—in compliance with ORCP 18 B.

Nevertheless, both the trial court and the Court of Appeals concluded that plaintiff had not properly pleaded damages because, as the Court of Appeals reasoned:

"the constitution bars plaintiff from pursuing a claim of [this] nature. *** Here, as already explained, the constitution precludes plaintiff from establishing that he suffered economic damages in the form of lost income. Therefore, based on plaintiff's allegations, we conclude that he cannot seek noneconomic damages for adverse treatment associated with visits and housing and emotional or mental harm."

*Huskey*, 329 Or App at 400-01.

However, Article I, section 41(3) does not say that an inmate cannot pursue a claim wherein damages are calculated by looking to lost future economic benefits. The operative language of Article I, section 41(3), reads as follows:

"[N]o inmate has a legally enforceable right to a job or to otherwise participate in work, on-the-job training or educational programs or to compensation for work or labor performed while an inmate of any state, county or city corrections facility or institution."

Even accepting, for purposes of argument, the department's construction of Article I, section 41(3) as unaffected by Article I, section 34(2), all Article I, section 41(3) states is that inmates have no "right" to employment.[2] But we have, on multiple occasions, rejected the contention that a lack of a "right" to future employment is fatal to a claim alleging economic damages based on future earnings. In *Tadsen v. Praegitzer Industries, Inc.,* 324 Or 465, 470-71, 928 P2d 980 (1996), for example, we considered an action for unlawful employment practices, concluding as follows:

"We next consider whether the fact that employment is 'at-will' prevents recovery of [future earnings] in all cases.

"Before the Court of Appeals, defendant argued that, notwithstanding a discriminatory discharge and its actual causal relationship to a loss of future earnings, an at-will employee cannot recover damages for that loss because, independent of the unlawful firing, the employee has no 'right' to, or assurance of, any future employment with the employer. * * *

"We decline to hold that an at-will employee never can prove the requisite facts for an award of front pay. The fact that at-will employment may be terminated for any nondiscriminatory purpose does not necessarily mean that the likely duration of that employment is incapable of proof to the required degree of certainty. *At-will employment may be a factor that bears on whether the proof is sufficient in a particular case, but the right to terminate someone's employment does not establish as a matter of law that an employee cannot prove the existence of front pay damages.*"

*Id*. (emphasis added).

We reiterated that principle 17 years later in *Cocchiara v. Lithia Motors, Inc*., 353 Or 282, 294-95, 297

---

[2] To be clear, we are not deciding whether Article I, section 41(3), could properly be construed, in light of the subsequent enactment of Article I, section 34(2), to deny AICs such as plaintiff a right to compensation for work performed. That is the crux of the constitutional issue litigated by the parties, which we need not resolve.

P3d 1277 (2013). There, in the context of a claim for fraudulent misrepresentation, we held:

> "[B]oth defendant and the Court of Appeals relied on [an earlier Court of Appeals case] for the proposition that the at-will nature of the corporate job precluded plaintiff from recovering lost wages for that job. However, this court has rejected a similar proposition in [*Tadsen*.] *** *Similarly, in this case, the fact that the corporate job was terminable at will, standing alone, does not create a conclusive presumption that plaintiff cannot prove damages related to the loss of that job.* Instead, as in *Tadsen*, plaintiff may seek to prove what he would have earned in the corporate job and how long he likely would have remained in that job had he been hired as promised and allowed to start work. Although it may be easier for a plaintiff to prove the likely duration of employment in a wrongful discharge case, where the employee has a history of employment with the employer, a plaintiff is entitled to attempt to make such a showing outside the wrongful discharge context."

*Id*. (emphasis added).

The reasoning of *Tadsen* and *Cocchiara* applies equally here. For purposes of pleading economic damages, the provision in Article I, section 41(3)—that "no inmate has a legally enforceable right to a job or to otherwise participate in work"—places AICs in no different a position than that of the at-will employment status of most Oregonians. The existence or extent of any "right" to future employment is not a barrier to pleading economic damages based on lost future income.

An ORCP 21 motion to dismiss, which evaluates the adequacy of pleadings and legal claims, is not the proper vehicle to evaluate the strength or sufficiency of the evidence in support of those legal claims. Challenges to the sufficiency of proof are properly suited to a motion for summary judgment, or a trial. As we have repeatedly cautioned, "[i]ssues of fact cannot be tried on a motion for judgment on the pleadings." *Salem Sand v. City of Salem*, 260 Or 630, 636, 492 P2d 271 (1971) (citing *Scott & Payne v. Potomac Ins. Co.*, 217 Or 323, 341 P2d 1083 (1959) and *Smith v. Aplanalp et al.*, 126 Or 213, 267 P 1070 (1938)).

Here, whatever issue Article I, section 43 might pose for the damages element of petitioner's breach of contract claim, it is, fundamentally, not a pleading issue at all—it is an issue of proof and causation. Paraphrasing *Tadsen*, Article I, section 43, may be a factor that bears on whether plaintiff ultimately can prove, by a preponderance of the evidence, that the department's alleged retaliation against him caused his loss of future income, but the lack of a right to employment does not establish, as a matter of law, that plaintiff cannot prove economic damages in the form of future lost wages. Stated even more simply, any lack of a right to employment does not mean that plaintiff's complaint did not state ultimate facts sufficient to constitute a claim.

For those reasons, we hold that the trial court erred when it granted the department's motion under ORCP 21 to dismiss plaintiff's complaint.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.